**Opinion filed February 11, 2011**



## In The

# Eleventh Court of Appeals

_____

### No. 11-09-00304-CV

_____

## IN THE MATTER OF A.M., A JUVENILE

**On Appeal from the County Court at Law**

**Erath County, Texas**

**Trial Court Cause No.  JV01303**

### O P I N I O N

The trial court found that A.M. engaged in delinquent conduct and committed him to the Texas Youth Commission for an indeterminate period of time not to exceed his twenty-first birthday.  In two appellate issues, A.M. contends that the trial court erred by denying his motion to suppress evidence.  We affirm.

*Background Facts*

In 2008, A.M. was charged with aggravated sexual assault of his twelve-year-old sister.  At that time, A.M. was fourteen years old.  Pursuant to a plea bargain agreement, the 2008 aggravated sexual assault charge was reduced to a charge of indecency with a child by exposure, and A.M. was placed on probation for two years.  The conditions of probation required A.M. to participate in sex offender treatment.  As part of that treatment, A.M.'s therapist required him to

take a monitoring polygraph examination. On August 6, 2009, A.M. took the examination. During the interview part of the examination, A.M. told the polygraph examiner that he had engaged in sexual contact with his sister five times since the beginning of his probation period. On August 17, 2009, the State filed an original adjudication petition alleging that, on or about May 15, 2009, A.M. had committed the offense of aggravated sexual assault of his sister.

A.M. filed a motion to suppress the statements that he had made to the polygraph examiner. Following a hearing, the trial court denied the motion. A.M. then pleaded "true" to the allegations in the State's petition and, in a stipulation of evidence, judicially confessed that he had committed the alleged offense. The trial court entered an adjudication-hearing judgment in which it found that A.M. had committed the offense of aggravated sexual assault of a child and adjudicated A.M. as having engaged in delinquent conduct. The trial court also entered an order committing A.M. to the Texas Youth Commission.

*Issues on Appeal*

Appellant contends that the trial court erred by denying his motion to suppress for two reasons. In his first issue, he argues that the condition of his probation requiring him to take the polygraph examination placed him in a "classic penalty situation" as described in *Minnesota v. Murphy*, 465 U.S. 420, 434-35 (1984), and that, therefore, his statements to the polygraph examiner were compelled and inadmissible. In his second issue, he argues that the disclosure of his polygraph examination results to the district attorney's office for the purpose of obtaining a new conviction against him violated his due process rights because he was led to believe that the results would be disclosed only to the probation department and his father.

*Standard of Review*

We review the ruling on a motion to suppress in a juvenile case using the same abuse of discretion standard that applies to such motions in adult criminal cases. *In re R.J.H.*, 79 S.W.3d 1, 6 (Tex. 2002). We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Hubert v. State*, 312 S.W.3d 554, 559 (Tex. Crim. App. 2010); *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). First, we afford almost total deference to the trial court's determination of historical facts. *Valtierra*, 310 S.W.3d at 447. The trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Id.*; *Garza v. State*, 213 S.W.3d 338, 346 (Tex. Crim. App. 2007). When, as here, no findings of fact were requested or filed, we view the evidence in the light most favorable to the

trial court's ruling and assume that the trial court made implicit findings of fact supported by the record. *Valtierra*, 310 S.W.3d at 447; *Ford v. State*, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005); *State v. Ross*, 32 S.W.3d 853, 855-56 (Tex. Crim. App. 2000). Second, we review de novo the trial court's application of law to facts. *Hubert*, 312 S.W.3d at 559; *Valtierra*, 310 S.W.3d at 447.

*The Suppression Hearing*

The record shows that Bryan Perot was a polygraph examiner with Wood & Associates Polygraph Service in Arlington, Texas. Perot testified that he performed polygraph examinations for sex offender treatment. He said that various types of polygraph examinations were administered, including original offense examinations, sexual history examinations, monitoring examinations, maintenance examinations, and specific issue examinations. Perot described in detail the procedures that were used in administering polygraph examinations, and he said that the same procedures were used for all types of examinations.

Perot testified that A.M.'s therapist, Linda Baley, and his probation officer, Angela Hunt, sent A.M. to take a monitoring polygraph examination. Perot said that the purpose of a monitoring examination was "to make sure there [had] been no re-offense or high-risk behavior that could lead to a re-offense." During a monitoring examination, the person was asked whether he or she had engaged in sexual contact with a child during the relevant time period. A.M.'s monitoring examination was to cover the time period between the date his probation began and the date of the examination. Hunt testified that Baley required the monitoring polygraph examination as part of A.M.'s treatment.

On August 6, 2009, Perot administered a polygraph examination to A.M. Perot testified that, before administering the examination, he told A.M. that the examination was voluntary and that he did not have to take it if he did not want to take it. Perot also explained the examination procedure to A.M. and reviewed the provisions of a release with him before administering the examination. Perot testified that A.M. signed the release before taking the examination. In part, the release provided, "I understand that this examination is voluntary and I have the right to refuse the examination." Perot believed that A.M. was capable of understanding and did understand that taking the examination was voluntary.

The release also provided that, if A.M. chose to take the examination, it would consist of three parts. In the first part, Perot would interview A.M. about the areas and subject matter in

3

question. In the second part, Perot would administer the actual polygraph examination. In the third part, Perot would inform A.M. of his opinion as to A.M.'s truthfulness during the examination. The release also provided that Wood's Polygraph would release the examination results to Linda Baley, Erath County Juvenile Services, and A.M.'s father and "to no one else without [A.M.'s] consent." According to Perot's testimony, he told A.M. that he could be required by law, such as by subpoena or court order, to release the examination results to other parties.

Perot proceeded to perform the interview part of the polygraph examination. During the interview, Perot defined "sexual contact" and asked A.M. whether he had engaged in sexual contact. A.M. told Perot that he had engaged in sexual contact with his sister five times while on probation. Based on A.M.'s statements, Perot changed the examination to a specific issue examination about A.M.'s sexual contact with his sister. Perot formulated polygraph questions and administered them to A.M. Perot believed that A.M. was truthful in answering the questions.

Hunt testified that she started working with A.M. in July 2008. Hunt said that A.M. had learning disabilities. However, Hunt believed that he would have understood what was meant by "[t]his test is voluntary" and "[y]ou don't have to take it if you don't want to." Hunt believed that A.M. was told that Baley recommended the polygraph examination as part of his treatment program. Hunt said that Baley advised A.M. to be honest and to provide information during the examination. Hunt testified that she did not tell A.M. that his probation would be revoked if he did not take the polygraph examination.

A.M. submitted an affidavit in support of his motion to suppress. According to the affidavit, Baley told A.M. that he had to take a polygraph examination and that he had to tell the truth. A.M. stated in the affidavit that he was never told he could refuse to take a polygraph examination or refuse to answer any questions during the examination. A.M. also stated that he thought he would get into trouble if he refused to take the examination or answer questions during the examination. He stated that, "[f]rom Ms. Baley, [he] understood [that he] could go to TYC if [he] refused to take the exam or [f]ailed the exam." He also stated that he would have refused to take the polygraph examination if he could have done so without getting into more trouble.

*Analysis*

In his first issue, A.M. contends that his statements to Perot were compelled. The State may not compel a person to make an incriminating statement against himself. U.S. CONST. amend. V; TEX. CONST. art. I, § 10. A criminal defendant does not lose this constitutional protection against self-incrimination merely because he has been convicted of a crime. *Murphy*, 465 U.S. at 426; *Chapman v. State*, 115 S.W.3d 1, 5 (Tex. Crim. App. 2003). A person who is on probation has a right against self-incrimination concerning statements that would incriminate him for some other offense. *Murphy*, 465 U.S. at 426; *Chapman*, 115 S.W.3d at 5-6.

As a general rule, the privilege against self-incrimination is not self-executing. *Murphy*, 465 U.S. at 428-29. With few exceptions to this general rule, a person must timely invoke the privilege to obtain its protections. Otherwise, the person may not claim that his statement was compelled. *Murphy*, 465 U.S. at 428-29, 434; *Chapman*, 115 S.W.3d at 6.

The privilege against self-incrimination is self-executing when a person is subjected to a custodial interrogation by law enforcement officers. *Murphy*, 465 U.S. at 429-30. Statements made by a suspect during a custodial interrogation are inadmissible unless the suspect was given a *Miranda*[1] warning and knowingly and intelligently waived his privilege against self-incrimination and his right to counsel. *Murphy*, 465 U.S. at 430; *Miranda*, 384 U.S. at 475. However, requiring a probationer to submit to a polygraph examination does not subject the person to custodial interrogation. *Ex parte Renfro*, 999 S.W.2d 557, 561 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd); *Marcum v. State*, 983 S.W.2d 762, 766 (Tex. App.—Houston [14th Dist.] 1998, pet. ref'd). Therefore, the probationer need not be given *Miranda* warnings before administering the polygraph examination. *Marcum*, 983 S.W.2d at 766.

Another exception to the general rule is the "classic penalty situation." *Murphy*, 465 U.S. at 434-35; *Chapman*, 115 S.W.3d at 6. If a person is placed in a classic penalty situation, the privilege against self-incrimination is self-executing, the person's statements are deemed compelled, and the statements are inadmissible in a criminal prosecution. *Murphy*, 465 U.S. at 434-35; *Chapman*, 115 S.W.3d at 6-7. In the classic penalty situation, the State threatens a person with punishment for asserting his privilege against self-incrimination, thereby depriving him of his choice to refuse to answer. *Chapman*, 115 S.W.3d at 6. In the probation context, a classic penalty situation is created if the State, either expressly or by implication, asserts that

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

invocation of the privilege against self-incrimination would lead to a revocation of probation. *Murphy*, 465 U.S. at 435. To determine the issue, courts must inquire "whether [the person's] probation conditions merely required him to appear and give testimony about matters relevant to his probationary status or whether they went farther and required him to choose between making incriminating statements and jeopardizing his conditional liberty by remaining silent." *Id.* at 436; *Chapman*, 115 S.W.3d at 7-8.

As the sole judge of the credibility of the witnesses, the trial court was free to believe Perot's and Hunt's testimony and to disbelieve A.M.'s statements in his affidavit. *Valtierra*, 310 S.W.3d at 447; *Garza*, 213 S.W.3d at 346. According to Perot, he told A.M. that the polygraph examination was voluntary and that he could refuse to take it. A.M. signed a release indicating that he understood these facts, and Perot believed that A.M. understood them. Hunt believed that A.M. would have understood the explanation that the test was voluntary and that he did not have to take it. Hunt testified that she did not tell A.M. his probation would be revoked if he did not take the examination. Based on the evidence, the trial court could have reasonably concluded that the State did not expressly or impliedly threaten A.M. with revocation of his probation if he exercised his privilege against self-incrimination and that, therefore, the State did not place A.M. in a classic penalty situation. *Murphy*, 465 U.S. at 435-36; *Chapman*, 115 S.W.3d at 6-7. Therefore, A.M.'s privilege against self-incrimination was not self-executing. *Murphy*, 465 U.S. at 434; *Chapman*, 115 S.W.3d at 11. Because A.M. did not invoke his privilege against self-incrimination, his statements to Perot were not compelled within the meaning of the Fifth Amendment. *Chapman*, 115 S.W.3d at 3. A.M.'s first issue is overruled.

In his second issue, A.M. argues that his statements to Perot were involuntary because the State used trickery or deception to obtain them. Trickery or deception may render a statement involuntary if "the method was calculated to produce an untruthful confession or was offensive to due process." *Creager v. State*, 952 S.W.2d 852, 856 (Tex. Crim. App. 1997); *Harty v. State*, 229 S.W.3d 849, 855 (Tex. App.—Texarkana 2007, pet. ref'd). The release that A.M. signed in connection with the polygraph examination provided that Wood's Polygraph would disclose the examination results to Linda Baley, Erath County Juvenile Services, and A.M.'s father and "to no one else without [A.M.'s] consent." Relying on this language, A.M. contends that the State tricked or deceived him into making the statements to Perot by leading him to believe that the results of the polygraph examination would be disclosed only to the probation department and

his father and not to the prosecutor. A.M. asserts that "[t]his deception [was] offensive to due process."

A.M. did not raise this issue in the trial court. Therefore, he failed to preserve the issue for our review. TEX. R. APP. P. 33.1; *Swain v. State*, 181 S.W.3d 359, 365 (Tex. Crim. App. 2005). However, even if he had preserved error, we would conclude that the trial court did not err by denying his motion to suppress. The release expressly authorized Wood's Polygraph to disclose the polygraph examination results to the probation department. Perot explained to A.M. that he could be required by law to release the examination results to other parties. There was no evidence that the probation department promised not to disclose the examination results. Absent an express or implied promise to the contrary, a probation officer is duty bound to report wrongdoing by the probationer when it comes to her attention. *Murphy*, 465 U.S. at 432. Based on the evidence, the trial court could have reasonably concluded that the State did not engage in trickery or deception. Additionally, A.M. did not present any evidence that he would not have made the statements to Perot but for a promise that they would not be disclosed to parties other than those listed in the release. A.M.'s second issue is overruled.

*This Court's Ruling*

The trial court's order is affirmed.


TERRY McCALL
JUSTICE

February 11, 2011

Panel consists of: Wright, C.J.,
McCall, J., and Strange, J.

7