NUMBER
13-10-00189-CV

 

                                        COURT OF APPEALS

 

                     THIRTEENTH
DISTRICT OF TEXAS

 

                         CORPUS
CHRISTI - EDINBURG

                                                                      

 

IN THE MATTER OF P.D.M.,
A JUVENILE

                                                                      

 

On appeal from the Juvenile Court 

of Polk County, Texas.

                                                                  

 

MEMORANDUM OPINION

 

 Before
Chief Justice Valdez and Justices Rodriguez and Benavides

                      Memorandum
Opinion by Justice Benavides

 

Appellant, P.D.M., was convicted by
a juvenile court of delinquent conduct for murder and reckless injury to a
child for which he was sentenced to twenty-four years’ and twenty years’
commitment with the Texas Youth Commission (“TYC”), respectively.   Each
sentence carried the possibility of transfer to the Texas Department of
Criminal Justice—Institutional Division (“TDCJ”) upon P.D.M. reaching the age
of majority.  Shortly before his twenty-first birthday, and upon the recommendation
of TYC, P.D.M. was ordered to be transferred to TDCJ to serve the remainder of
his sentences.  By one issue, P.D.M contends that the trial court abused its
discretion in ordering that he be transferred to TDCJ as opposed to being
ordered to adult parole.  We affirm.

I.  Background[1]

            In
opening arguments in the hearing on the order to transfer P.D.M. to TDCJ,
without objection, the State “reminded” the court of the circumstances of the
underlying offenses for which P.D.M. was being confined:

            [On]
January 1st of 2005, [P.D.M.] was playing with a weapon.  He was dry-firing an
automatic pistol at three other children, all under the age of 14.  At some
point, he re-engaged the clip in that weapon, pulled the slide back to engage a
bullet, and then pulled the trigger, shooting his sister in the face.

 

            He then
took the other two children home, in an attempt to help cover up the crime that
he had committed, then tampered with evidence, moved the body, covered up the
blood, lied to his mother about what had occurred, and continued with that lie
for quite a period of time before the Sheriff’s Department was finally able to
determine that it was not an accident, and that he had, in fact, murdered his
sister.

 

At the time of the shooting, P.D.M. was fifteen years old. 
The jury specifically found that P.D.M. was not guilty of delinquent conduct
for “intentionally or knowingly” shooting his sister, but rather, that he was
guilty of delinquent conduct because he caused her death while committing or
attempting to commit the felony of endangering a child and because he
recklessly caused serious bodily injury to his sister by shooting her with a
firearm.  P.D.M. appealed his sentences to the Court of Appeals for the Ninth
Judicial District, and the court affirmed the juvenile court’s judgment.  See
In re P.D.M., No. 09-06-246-CV, 2008 Tex. App. LEXIS 897, at *9 (Tex.
App.–Beaumont February 7, 2008, no. pet.) (mem. op.).

            At the transfer hearing, the State called two
witnesses—Dr. Steven Brownlow[2]
and Leonard Cucolo.[3] 
Each of these witnesses was, at the time of the hearing, employed by TYC and
each testified that it was the recommendation of TYC that P.D.M. be transferred
to TDCJ.  Specifically, Dr. Brownlow testified as follows:

Q:        [Counsel
for the State] Okay.  You, I guess along with your supervisor, Dr. Claridge,
were ultimately asked to give a recommendation to TYC[,] and indirectly to this
Court, as to whether or not [P.D.M.] should be paroled when he turns 21[,] here
in April, back to our community or transferred in to the adult correctional
TDCJ facility, what was your opinion?

 

A:        [Dr.
Brownlow] Our opinion was that he needed to be transferred.

 

Q:        What
was the principal basis for that finding?

 

A:        . . . [T]he
research evidence on the Capital Offender Program has shown that the people who
have completed it successfully[] do well.  They have much lower recidivism
rates than people who don’t go through the program.

 

                        On
the other hand, people who fail the program, that’s not—that’s not true.  And
the biggest reason is not that they [] could stand up and say what they’ve done
and sort of act it out and so forth, but that they’ve come to accept
responsibility for what they’ve done.  And by accepting responsibility for what
they’ve done, they’re then able to formulate plans.  They have some
self-insight, some self-understanding, and they’re then able to formulate some
plans that would allow them to realize, oh, I don’t want this to happen again,
I better do these things.  I better not put myself into these kinds of situations. 
I better not do this, I better do this instead.

 

                        If
you didn’t do anything, if you steadfastly maintain that you didn’t do
anything, and the only reason that you got—the only reason that you got 24
years is because the Jury understood it was an accident, which he told me, then
it’s very difficult to see that —that he’s able to make any kind of reasonable
plans that are going to keep him safe in the future.

            

 . . . .

 

Q:        But
when you look at the overall big picture, I guess I’m gleaning from your
testimony, you have concern as to whether he made—he has the potential, at
least, to violently re-offend—

 

A:        Yes,
I tend to believe that in this case, treatment is important.  I tend to think
that if we’re—if—to the extent that TYC is a juvenile agency that’s charged
with rehabilitating criminals, and they refuse to go through rehabilitative
therapy, then it’s hard to say that I believe that they have rehabilitated
themselves.

 

The testimony further indicated that P.D.M. refused to
participate in any therapy programs for the first two years of his confinement
at TYC.  However, once his appeal was finally denied, P.D.M. eventually agreed,
“kicking and screaming,” to participate in the Capital Offenders Program.  He
was deemed to have failed the program.  According to the testimony, P.D.M.
never took responsibility for his involvement in his sister’s death.  At one
point during the program, P.D.M. did admit that “his finger must have touched
the trigger,” but just three days later, he was again denying any responsibility
for the shooting.  

            Testimony from the witnesses also indicated
that, while at TYC, P.D.M. had taught himself to read and write and had earned
a high-school diploma; that he had assisted a TYC teacher in instructing other
students; that he completed trade courses in construction and cabinetry; that,
though gangs were present at TYC, he was not a member of any gang; and that he
had an exemplary behavioral record with not one single “write-up” in forty-five
months of confinement.  Additionally, without objection, counsel for P.D.M.
introduced two handwritten notes from P.D.M. into evidence in which P.D.M
stated, in pertinent part “I do addmet [sic] that I took my sister’s life by
shooting her[,] but it was not on purpes [sic] and I think about it from the
time I wake up to the time I go to bed.  I know that it’s my fault for the
death of my sister.”

II.  Standard of Review

We review the juvenile court’s
decision to transfer a juvenile from TYC to TDCJ for an abuse of discretion.  In
re F.D., 245 S.W.3d 110, 113 (Tex. App.–Dallas 2008, no pet.); In re
C.L., 874 S.W.2d 880, 886 (Tex. App.–Austin 1994, no writ).  In deciding
whether the juvenile court abused its discretion, we review the entire record
to determine if the court acted without reference to any guiding rules or
principles. In re J.J., 276 S.W.3d 171, 178 (Tex. App.–Austin 2008, pet.
denied); In re J.L.C., 160 S.W.3d 312, 313 (Tex. App.–Dallas 2005, no
pet.).  If “some evidence” exists to support the juvenile court's decision,
there is no abuse of discretion.  In re F.D., 245 S.W.3d at 113; In
re D.L., 198 S.W.3d 228, 229 (Tex. App.–San Antonio 2006, pet. denied); In
re R.G., 994 S.W.2d 309, 312 (Tex. App.–Houston [1st Dist.] 1999, pet.
denied).  This Court will not substitute its own judgment for that of the
juvenile court, nor will we reverse the juvenile court’s ruling merely because
we disagree with its decision.  In re C.L., 874 S.W.2d at 886. 

Once TYC refers a person to the
juvenile court for a transfer, the juvenile court is required to hold a hearing
to determine whether to transfer the person to the custody of TDCJ for the
completion of the person's sentence.  See Tex. Fam. Code Ann. § 54.11(a), (i) (West Supp. 2010). 
In making this determination, the juvenile court may consider a number of
factors, including:

the experiences and
character of the person before and after commitment to the youth commission,
the nature of the penal offense that the person was found to have committed and
the manner in which the offense was committed, the abilities of the person to
contribute to society, the protection of the victim of the offense or any
member of the victim’s family, the recommendations of the youth commission and
prosecuting attorney, the best interests of the person, and any other factor
relevant to the issue to be decided.

 

Id. § 54.11(k) (West Supp. 2010); see In re
J.J., 276 S.W.3d at 178.  “The juvenile court is not required to consider
all of the factors, and the court is expressly allowed to consider unlisted but
relevant factors.”  In re J.J., 276 S.W.3d at 178; see In re C.L.,
874 S.W.2d at 886.  Evidence of each factor listed is not required, and the
juvenile court is free, within its discretion, to assign different weights to
the factors it considers.  In re J.J., 276 S.W.3d at 178. 

III.  Analysis

In P.D.M’s only issue, he
challenges the juvenile court’s decision to transfer him to TDCJ, arguing,
specifically, that the court abused its discretion because the evidence at the
hearing “strongly supported the release of P.D.M. to adult parole,” and the
evidence “all but established that the community would be safe were P.D.M
released on adult parole.”  We disagree.

The trial court heard evidence
about the violent nature of the underlying offense and that before entering
TYC, P.D.M. was prone to bullying others and had, on at least one other
occasion, “dry-fired” a shotgun at other children.  The trial court also heard
testimony that P.D.M. had not accepted full responsibility for his role in his
sister’s death, and this often indicated a higher recidivism rate in violent
offenders.  See In re J.J., 276 S.W.3d at 180 (noting that “there was
evidence that the offenses for which [the defendant] had been adjudicated
delinquent were violent crimes involving deadly weapons and that [he] refused
to accept full responsibility for the offenses he had committed” and concluding
that this was sufficient to justify the trial court’s transfer of the defendant
to TDCJ).

We recognize that there was some
evidence tending to indicate that P.D.M. had made significant progress while at
TYC.  However, this does not negate the factors in the family code for which
the trial court heard evidence in support of transfer to TDCJ.  See id.
at 178 (explaining that the juvenile court is within its discretion in assigning
whatever weight it deems appropriate to the factors listed in the family code).
 Similarly, the fact that P.D.M. seemed to take responsibility for his sister’s
death in a note written during the hearing does not necessarily negate Dr.
Brownlow’s testimony that P.D.M. had not truly accepted responsibility because
the court is the sole judge of the credibility of the witnesses and was free to
disbelieve P.D.M.’s statement.  See In re A.M., 333 S.W.3d 411, 417 (Tex.
App.–Eastland 2011, pet. filed).  Additionally, the trial court heard testimony
that TYC “strongly” recommended that P.D.M. be transferred to TDCJ.  See Tex. Fam. Code Ann. § 54.11(k)
(allowing the trial court to consider “the recommendations of the youth
commission and prosecuting attorney”).  

Because there was some evidence on
which the trial court could have properly based its ruling, we cannot say the
trial court acted without reference to guiding rules and principles in its
determination that P.D.M. be transferred to TDCJ.  See In re J.J., 276
S.W.3d at 178; In re J.L.C., 160 S.W.3d at 313; In re F.D., 245
S.W.3d at 113; In re D.L., 198 S.W.3d at 229; In re R.G., 994
S.W.2d at 312.  Accordingly, we find no abuse of discretion, and P.D.M.’s issue
on appeal is overruled.

IV.  Conclusion

            Having overruled P.D.M.’s only issue on appeal,
we affirm the trial court’s order transferring P.D.M. to TDCJ.

 

________________________

GINA
M. BENAVIDES,

Justice

 

 

Delivered and filed the

16th day of June, 2011. 









[1] This case is before this Court on
transfer from the Court of Appeals for the Ninth Judicial District in Beaumont
pursuant to an order issued by the Supreme Court of Texas. See Tex. Gov't Code Ann. § 73.001 (West 2005).





[2] The testimony indicated that Dr. Brownlow received a doctoral
degree in clinical psychology from Walding University and a master’s degree in
educational psychology from the University of Texas at Austin.  Additionally,
the testimony indicated that he had worked primarily in the field of treatment
of adolescent males for “the better part” of thirty years and had previously
worked with the San Antonio State Hospital. 

 





[3] The record showed that Cucolo was the Court Liaison for TYC and
that his responsibilities included providing information to the trial court
about offenders who were being transferred and providing the court with TYC’s
recommendations.  Cucolo testified that he had worked
with TYC since 1988 as a Program Therapist in the Sex Offender Treatment
Program, a Program Administrator, a Victim Services Coordinator, and a Court
Liaison.  He received a bachelor’s degree from Southwest Texas State University
and a master’s degree in social work from Our Lady of the Lake University in
San Antonio.