

NUMBER 13-10-00189-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

## IN THE MATTER OF P.D.M., A JUVENILE

On appeal from the Juvenile Court
of Polk County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Benavides
Memorandum Opinion by Justice Benavides**

Appellant, P.D.M., was convicted by a juvenile court of delinquent conduct for murder and reckless injury to a child for which he was sentenced to twenty-four years' and twenty years' commitment with the Texas Youth Commission ("TYC"), respectively. Each sentence carried the possibility of transfer to the Texas Department of Criminal Justice—Institutional Division ("TDCJ") upon P.D.M. reaching the age of majority.

Shortly before his twenty-first birthday, and upon the recommendation of TYC, P.D.M. was ordered to be transferred to TDCJ to serve the remainder of his sentences. By one issue, P.D.M contends that the trial court abused its discretion in ordering that he be transferred to TDCJ as opposed to being ordered to adult parole. We affirm.

## I. BACKGROUND[1]

In opening arguments in the hearing on the order to transfer P.D.M. to TDCJ, without objection, the State "reminded" the court of the circumstances of the underlying offenses for which P.D.M. was being confined:

> [On] January 1st of 2005, [P.D.M.] was playing with a weapon. He was dry-firing an automatic pistol at three other children, all under the age of 14. At some point, he re-engaged the clip in that weapon, pulled the slide back to engage a bullet, and then pulled the trigger, shooting his sister in the face.
>
> He then took the other two children home, in an attempt to help cover up the crime that he had committed, then tampered with evidence, moved the body, covered up the blood, lied to his mother about what had occurred, and continued with that lie for quite a period of time before the Sheriff's Department was finally able to determine that it was not an accident, and that he had, in fact, murdered his sister.

At the time of the shooting, P.D.M. was fifteen years old. The jury specifically found that P.D.M. was not guilty of delinquent conduct for "intentionally or knowingly" shooting his sister, but rather, that he was guilty of delinquent conduct because he caused her death while committing or attempting to commit the felony of endangering a child and because he recklessly caused serious bodily injury to his sister by shooting her with a firearm.

---

[1] This case is before this Court on transfer from the Court of Appeals for the Ninth Judicial District in Beaumont pursuant to an order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2005).

2

P.D.M. appealed his sentences to the Court of Appeals for the Ninth Judicial District, and the court affirmed the juvenile court's judgment. *See In re P.D.M.*, No. 09-06-246-CV, 2008 Tex. App. LEXIS 897, at *9 (Tex. App.–Beaumont February 7, 2008, no. pet.) (mem. op.).

At the transfer hearing, the State called two witnesses—Dr. Steven Brownlow[2] and Leonard Cucolo.[3] Each of these witnesses was, at the time of the hearing, employed by TYC and each testified that it was the recommendation of TYC that P.D.M. be transferred to TDCJ. Specifically, Dr. Brownlow testified as follows:

Q:  [Counsel for the State] Okay. You, I guess along with your supervisor, Dr. Claridge, were ultimately asked to give a recommendation to TYC[,] and indirectly to this Court, as to whether or not [P.D.M.] should be paroled when he turns 21[,] here in April, back to our community or transferred in to the adult correctional TDCJ facility, what was your opinion?

A:  [Dr. Brownlow] Our opinion was that he needed to be transferred.

Q:  What was the principal basis for that finding?

A:  . . . [T]he research evidence on the Capital Offender Program has shown that the people who have completed it successfully[] do well. They have much lower recidivism rates than people who don't go through the program.

---

[2] The testimony indicated that Dr. Brownlow received a doctoral degree in clinical psychology from Walding University and a master's degree in educational psychology from the University of Texas at Austin. Additionally, the testimony indicated that he had worked primarily in the field of treatment of adolescent males for "the better part" of thirty years and had previously worked with the San Antonio State Hospital.

[3] The record showed that Cucolo was the Court Liaison for TYC and that his responsibilities included providing information to the trial court about offenders who were being transferred and providing the court with TYC's recommendations. Cucolo testified that he had worked with TYC since 1988 as a Program Therapist in the Sex Offender Treatment Program, a Program Administrator, a Victim Services Coordinator, and a Court Liaison. He received a bachelor's degree from Southwest Texas State University and a master's degree in social work from Our Lady of the Lake University in San Antonio.

On the other hand, people who fail the program, that's not—that's not true. And the biggest reason is not that they [] could stand up and say what they've done and sort of act it out and so forth, but that they've come to accept responsibility for what they've done. And by accepting responsibility for what they've done, they're then able to formulate plans. They have some self-insight, some self-understanding, and they're then able to formulate some plans that would allow them to realize, oh, I don't want this to happen again, I better do these things. I better not put myself into these kinds of situations. I better not do this, I better do this instead.

If you didn't do anything, if you steadfastly maintain that you didn't do anything, and the only reason that you got—the only reason that you got 24 years is because the Jury understood it was an accident, which he told me, then it's very difficult to see that —that he's able to make any kind of reasonable plans that are going to keep him safe in the future.

. . . .

Q:   But when you look at the overall big picture, I guess I'm gleaning from your testimony, you have concern as to whether he made—he has the potential, at least, to violently re-offend—

A:   Yes, I tend to believe that in this case, treatment is important. I tend to think that if we're—if—to the extent that TYC is a juvenile agency that's charged with rehabilitating criminals, and they refuse to go through rehabilitative therapy, then it's hard to say that I believe that they have rehabilitated themselves.

The testimony further indicated that P.D.M. refused to participate in any therapy programs for the first two years of his confinement at TYC. However, once his appeal was finally denied, P.D.M. eventually agreed, "kicking and screaming," to participate in the Capital Offenders Program. He was deemed to have failed the program. According to the testimony, P.D.M. never took responsibility for his involvement in his

4

sister's death.   At one point during the program, P.D.M. did admit that "his finger must have touched the trigger," but just three days later, he was again denying any responsibility for the shooting.

Testimony from the witnesses also indicated that, while at TYC, P.D.M. had taught himself to read and write and had earned a high-school diploma; that he had assisted a TYC teacher in instructing other students; that he completed trade courses in construction and cabinetry; that, though gangs were present at TYC, he was not a member of any gang; and that he had an exemplary behavioral record with not one single "write-up" in forty-five months of confinement.   Additionally, without objection, counsel for P.D.M. introduced two handwritten notes from P.D.M. into evidence in which P.D.M stated, in pertinent part "I do addmet [sic] that I took my sister's life by shooting her[,] but it was not on purpes [sic] and I think about it from the time I wake up to the time I go to bed.   I know that it's my fault for the death of my sister."

## II.  STANDARD OF REVIEW

We review the juvenile court's decision to transfer a juvenile from TYC to TDCJ for an abuse of discretion.   *In re F.D.*, 245 S.W.3d 110, 113 (Tex. App.–Dallas 2008, no pet.); *In re C.L.*, 874 S.W.2d 880, 886 (Tex. App.–Austin 1994, no writ).   In deciding whether the juvenile court abused its discretion, we review the entire record to determine if the court acted without reference to any guiding rules or principles. *In re J.J.*, 276 S.W.3d 171, 178 (Tex. App.–Austin 2008, pet. denied); *In re J.L.C.*, 160 S.W.3d 312, 313 (Tex. App.–Dallas 2005, no pet.).   If "some evidence" exists to support the juvenile

court's decision, there is no abuse of discretion. *In re F.D.*, 245 S.W.3d at 113; *In re D.L.*, 198 S.W.3d 228, 229 (Tex. App.–San Antonio 2006, pet. denied); *In re R.G.*, 994 S.W.2d 309, 312 (Tex. App.–Houston [1st Dist.] 1999, pet. denied). This Court will not substitute its own judgment for that of the juvenile court, nor will we reverse the juvenile court's ruling merely because we disagree with its decision. *In re C.L.*, 874 S.W.2d at 886.

Once TYC refers a person to the juvenile court for a transfer, the juvenile court is required to hold a hearing to determine whether to transfer the person to the custody of TDCJ for the completion of the person's sentence. *See* TEX. FAM. CODE ANN. § 54.11(a), (i) (West Supp. 2010). In making this determination, the juvenile court may consider a number of factors, including:

> the experiences and character of the person before and after commitment to the youth commission, the nature of the penal offense that the person was found to have committed and the manner in which the offense was committed, the abilities of the person to contribute to society, the protection of the victim of the offense or any member of the victim's family, the recommendations of the youth commission and prosecuting attorney, the best interests of the person, and any other factor relevant to the issue to be decided.

*Id.* § 54.11(k) (West Supp. 2010); *see In re J.J.*, 276 S.W.3d at 178. "The juvenile court is not required to consider all of the factors, and the court is expressly allowed to consider unlisted but relevant factors." *In re J.J.*, 276 S.W.3d at 178; *see In re C.L.*, 874 S.W.2d at 886. Evidence of each factor listed is not required, and the juvenile court is free, within its discretion, to assign different weights to the factors it considers. *In re J.J.*, 276 S.W.3d at 178.

6

### III. ANALYSIS

In P.D.M's only issue, he challenges the juvenile court's decision to transfer him to TDCJ, arguing, specifically, that the court abused its discretion because the evidence at the hearing "strongly supported the release of P.D.M. to adult parole," and the evidence "all but established that the community would be safe were P.D.M released on adult parole." We disagree.

The trial court heard evidence about the violent nature of the underlying offense and that before entering TYC, P.D.M. was prone to bullying others and had, on at least one other occasion, "dry-fired" a shotgun at other children. The trial court also heard testimony that P.D.M. had not accepted full responsibility for his role in his sister's death, and this often indicated a higher recidivism rate in violent offenders. *See In re J.J.*, 276 S.W.3d at 180 (noting that "there was evidence that the offenses for which [the defendant] had been adjudicated delinquent were violent crimes involving deadly weapons and that [he] refused to accept full responsibility for the offenses he had committed" and concluding that this was sufficient to justify the trial court's transfer of the defendant to TDCJ).

We recognize that there was some evidence tending to indicate that P.D.M. had made significant progress while at TYC. However, this does not negate the factors in the family code for which the trial court heard evidence in support of transfer to TDCJ. *See id.* at 178 (explaining that the juvenile court is within its discretion in assigning whatever weight it deems appropriate to the factors listed in the family code). Similarly,

the fact that P.D.M. seemed to take responsibility for his sister's death in a note written during the hearing does not necessarily negate Dr. Brownlow's testimony that P.D.M. had not truly accepted responsibility because the court is the sole judge of the credibility of the witnesses and was free to disbelieve P.D.M.'s statement. *See In re A.M.*, 333 S.W.3d 411, 417 (Tex. App.–Eastland 2011, pet. filed). Additionally, the trial court heard testimony that TYC "strongly" recommended that P.D.M. be transferred to TDCJ. *See* Tex. Fam. Code Ann. § 54.11(k) (allowing the trial court to consider "the recommendations of the youth commission and prosecuting attorney").

Because there was some evidence on which the trial court could have properly based its ruling, we cannot say the trial court acted without reference to guiding rules and principles in its determination that P.D.M. be transferred to TDCJ. *See In re J.J.*, 276 S.W.3d at 178; *In re J.L.C.*, 160 S.W.3d at 313; *In re F.D.*, 245 S.W.3d at 113; *In re D.L.*, 198 S.W.3d at 229; *In re R.G.*, 994 S.W.2d at 312. Accordingly, we find no abuse of discretion, and P.D.M.'s issue on appeal is overruled.

## IV. Conclusion

Having overruled P.D.M.'s only issue on appeal, we affirm the trial court's order transferring P.D.M. to TDCJ.

_____
GINA M. BENAVIDES,
Justice

Delivered and filed the
16th day of June, 2011.

8