Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio



★ ★ ★ ★ ★ ★ ★



## MEMORANDUM OPINION

No. 04-11-00133-CR

The **STATE** of Texas,
Appellant

v.

Juan F. **PRUNEDA**, Jr.,
Appellee

From the County Court at Law, Kerr County, Texas
Trial Court No. CR-10-0020
Honorable Spencer W. Brown, Judge Presiding

Opinion by:    Phylis J. Speedlin, Justice

Sitting:    Catherine Stone, Chief Justice
Phylis J. Speedlin, Justice
Marialyn Barnard, Justice

Delivered and Filed:  December 21, 2011

AFFIRMED

The State appeals from an order granting the defendant's motion to suppress in this DWI-1st offense prosecution.  We affirm the trial court's order.

### ANALYSIS

Juan Pruneda, Jr. was stopped for an alleged traffic violation in his Dodge Ram 1500 pickup, and arrested for DWI.  Pruneda filed a motion to suppress alleging the officer lacked reasonable suspicion to stop his vehicle.  The evidence at the suppression hearing consisted of

Kerrville Police Officer Kristy Price's testimony, plus a DVD video from her patrol car, a map of the area, and her certification of training on standard field sobriety testing. Officer Price testified that she was parked across the street from Mulligan's Pub at 2:00 a.m. closing time on December 19, 2009, monitoring the crowd in the parking lot. Price stated she observed a silver car back out of the parking lot on to Water Street and begin to proceed westbound when a green Dodge Ram 1500 also backed out on to Water Street in front of the silver car, "cutting-off" the silver car and causing it to "stop to avoid a collision." Officer Price said the driver of the Dodge Ram committed the traffic offense of "failure to yield right of way;" however, she did not stop the vehicle for this offense. Instead, Officer Price followed both vehicles in her patrol car as they traveled westbound on Water Street; the silver car was between Price and the Dodge Ram. Price stated that she noticed an object go "flying through the air," which appeared to be a silver can with blue writing; she saw it hit the roadway and it appeared to contain an alcoholic beverage which she assumed was beer. Price testified she suspected the can was thrown from one of the vehicles, but she could not tell which vehicle it came from; tossing of the can would constitute the offense of littering, but she did not stop either vehicle for littering.

As she continued to follow the two vehicles, Price was traveling faster than the posted speed limit of 30 mph in order to catch up to the two vehicles and the Dodge Ram was increasing the distance between it and the silver car; she did not confirm the speed with radar and did not know the exact rate of speed of the Dodge Ram. Although Price explained she visually observed that the Dodge Ram was speeding, she did not stop it for speeding. At the intersection of Water and Washington Streets where the road narrows down to one lane and curves, Price stated she observed Pruneda activate his brakes twice in a "quick jerking, braking motion," and then the Dodge Ram appeared to strike the curb, causing the Dodge Ram to cross over into the oncoming

lane of traffic—Price stated all four tires crossed over the double yellow line and the Dodge Ram traveled in the oncoming lane for several feet before correcting back into the proper lane; this would constitute the traffic offense of failure to maintain the proper lane. Price then passed the silver car in order to catch up to the Dodge Ram. At the next intersection, controlled by a flashing yellow light signaling a "yield," the Dodge Ram stopped for approximately 26 seconds, which Price characterized as a "prolonged period of time," thereby committing the offense of "hindering traffic." At that point, Price activated her overhead lights and initiated a traffic stop of the Dodge Ram. Price testified the stop was based on "a totality of the entire driving" by Pruneda.

At the end of Price's direct testimony, the DVD video from her patrol car showing the sequence of events was admitted and played in court. On cross-examination, Price stated that everything she testified that she observed is shown on the video. However, she then conceded that the thrown can does not appear on the video. Price also agreed the road curves where B Street connects with Water Street and the Dodge Ram disappears from view when it goes around the curve; Price explained the truck sped up around the curve. However, with regard to whether the Dodge Ram was speeding, Price stated she has a radar unit in her vehicle, but did not use it; further, she did not "pace" the Dodge Ram to determine its speed and did not know how fast it was traveling. Further, Price stated the video shows the Dodge Ram striking the curb and crossing a double yellow line at the Water/Washington Street intersection; however, she conceded it is "hard to see" on the video, and agreed the double yellow line does not begin until after Washington crosses Water Street. In addition, Price stated she had not yet passed the silver car, and it was still in front of her vehicle at the time she saw the Dodge Ram hit the curb and veer into the opposite lane. Finally, Price clarified that her patrol vehicle pulled up right behind

the Dodge Ram after it had been stopped for "several seconds" at the flashing yellow light, and she waited behind it for approximately 26 seconds before she initiated her flashing lights.

At the conclusion of the hearing, the trial court granted Pruneda's motion to suppress. Thereafter, the court made the following written findings of fact in support of its ruling:

> \*\*\*
> 4.  Officer Price testified that everything she testified to in Court was captured on her video recording of the incident.
>
> 5.  There was no collision when the Defendant backed out of the Pub parking lot and the Officer did not pull over the Defendant's vehicle for the way he backed and pulled out.
>
> 6.  The video does not show the Defendant failing to yield right of way leaving the Pub parking lot.
>
> 7.  The Officer testified a can was thrown from either the Defendant's passenger window or the passenger window of a vehicle which was behind the Defendant's vehicle, but the Officer could not tell which vehicle the can came from. The video does not reflect a can coming from either vehicle or that a can landed in the roadway.
>
> 8.  The Officer lost sight of the Defendant's vehicle as it went around the curve at Water and B Street.
>
> 9.  The Officer did not clock the Defendant's vehicle on the radar as speeding. The Officer did not pace the Defendant's vehicle to determine if it was speeding. The Officer did not know how fast the Defendant was driving.
>
> 10. The video does not reflect the Defendant's vehicle ever hitting a curb on Water Street at Washington Street.
>
> 11. The Officer had another vehicle, a silver car, between her vehicle and the Defendant's vehicle during most of the pursuit.
>
> 12. The video does not reflect the Defendant's vehicle ever left his lane of traffic and crossed any double yellow lane dividers.
>
> 13. The Defendant's vehicle yielded at the yellow caution light at Water and Earl Garrett Street.
>
> 14. The video did not depict the Defendant driving his vehicle in a reckless manner.

15. Officer Price's video, State's Exhibit #3, is the most credible evidence in this case.

In its conclusions of law, the court noted that, as a matter of law, it is the sole judge of the credibility and weight of the evidence, and is free to believe or disbelieve all or any part of a witness's testimony. Based on its findings of fact, the trial court concluded that Officer Price lacked reasonable suspicion to stop Pruneda's vehicle.

On appeal, the State asserts the trial court's fact findings are not supported by the record, and that the totality of the circumstances gave rise to reasonable suspicion justifying the traffic stop. In reviewing the trial court's ruling on a motion to suppress, we afford almost total deference to the court's determination of historical facts, especially when it is based on assessment of a witness's credibility, as long as the fact findings are supported by the record. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010); *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We apply the same deferential standard when reviewing the court's ruling on "application of law to fact questions" or "mixed questions of law and fact" if resolution of those issues turns on an evaluation of credibility, but review de novo the court's application of the law to the facts, and resolution of mixed questions of law and fact, that do not depend upon credibility assessments. *Amador*, 221 S.W.3d at 673. When, as here, the trial court makes express findings of fact, we view the evidence in the light most favorable to the court's ruling and determine whether the evidence supports the fact findings. *Valtierra*, 310 S.W.3d at 447.

We conclude the trial court's fact findings are supported by the record, and that the totality of those facts do not show that Price had reasonable suspicion to stop Pruneda. Based on its findings, it is apparent that the trial court, acting as the sole judge of the credibility of the

witnesses and the weight of the evidence, exercised its discretion to resolve conflicts in the evidence and to disbelieve parts of Officer Price's testimony that conflicted with the video evidence from her patrol car. *See id.* Price testified that all of the traffic violations she stated she observed during the pursuit appeared on the video, but the video does not support her claim—it does not show a near collision and/or failure to yield right-of-way by Pruneda; it does not show a can thrown from a vehicle; it does not show Pruneda's Dodge Ram speeding; it does not show Pruneda's truck hitting a curb and all four tires crossing over a double yellow line for several seconds. Further, the 26-second yield that is shown on the video does not give rise to a reasonable suspicion of criminal activity, especially in view of the fact that Price's marked patrol vehicle was behind Pruneda's truck for most of the 26-second period. In addition, Price herself admitted she did not use radar or pacing to determine whether Pruneda was speeding, there was another vehicle in between her patrol car and Pruneda for most of the pursuit, and she lost sight of Pruneda's vehicle at one point. The totality of these circumstances does not amount to reasonable suspicion to stop Pruneda's vehicle. *See Terry v. Ohio*, 392 U.S. 1, 21 (1968); *Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000).

In its reply brief, the State argues that "clear, video evidence" is not required to support an investigatory stop, and complains it is being implicitly held to a higher standard than the minimal threshold of "reasonable suspicion." *See Carmouche*, 10 S.W.3d at 328. The State misconstrues the import of the trial court's findings that the video is the best, "most credible," evidence in this case, and does not show the alleged traffic violations Price testified formed the basis for her reasonable suspicion to stop Pruneda's vehicle. Video evidence of a traffic stop is obviously not required in every case, but in a case where there *is* video evidence which contradicts the officer's live testimony about the basis for the stop, it may certainly be considered

by the trial court. The officer's testimony cannot be viewed in isolation—the trial court was free to disbelieve all or part of the officer's testimony for any reason, including its viewing of the video. *Valtierra*, 310 S.W.3d at 447.

Based on the foregoing reasons, we overrule the State's issues on appeal and affirm the trial court's order granting Pruneda's motion to suppress.

Phylis J. Speedlin, Justice

DO NOT PUBLISH