Opinion issued June 11, 2013



In The

# Court of Appeals

For The

# First District of Texas

————————————————

## NO. 01-11-00067-CR

———————————————

NOE GUADALUPE MIJARES, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 180th District
Harris County, Texas
Trial Court Case No. 1267237

A jury found appellant Noe Guadalupe Mijares guilty of the offense of aggravated sexual assault. [1] The jury assessed appellant's punishment at 35 years in prison. Appellant raises four issues on appeal challenging the trial court's denial of his motion to suppress his written statement and asserting that the trial court erred by its evidentiary rulings.

We affirm.

## Background

On February 21, 2009, appellant called his ex-girlfriend "Mary" and asked her if she wanted a ride to a nightclub.[2] She agreed to allow appellant to take her to the club. After he picked her up, appellant asked Mary if she would reconcile with him. She told him she did not want to reconcile.

Instead of driving her to the nightclub, appellant drove Mary to where his eighteen-wheel truck was parked. Appellant asked Mary to come inside the truck to have sex with him. Mary refused. Appellant ordered Mary to come with him. When she did not comply, appellant punched Mary in the face several times and covered her mouth and nose with his hand. Mary pretended to pass out. Appellant let go of Mary, and she tried to escape. Appellant then attempted to shock Mary

---

[1]  *See* TEX. PENAL CODE ANN. § 22.021 (Vernon 2011).

[2]  We identify the complainant by a pseudonym to protect her anonymity.

with a stun gun. Appellant forced Mary inside the sleeping cab of his truck. He drove her to another location. After threatening her with a knife, appellant forced Mary to have anal sex with him.

The next morning, appellant drove to the parking lot of a fast food restaurant and parked. Mary was tied up inside the truck. When appellant left to get some food, Mary was able to free herself. She ran from the truck, but appellant saw her. Appellant caught Mary and began dragging her back to the truck.

Officer N. Streety of the Humble Police Department was driving nearby in his patrol car. He saw appellant and Mary struggling and stopped to investigate. After speaking with Mary, the officer took appellant into custody.

Appellant was taken to the Wallisville substation of the Harris County Sherriff's Office. There, he spoke with Sergeant S. McCoy. Although appellant's first language is Spanish, Sergeant McCoy communicated with appellant in English. Sergeant McCoy read appellant the five statutory rights as defined in Texas Code of Criminal Procedure article 38.22, section 2.[3] After he read each of the five rights, Sergeant McCoy asked appellant if he understood the right before reading the next right. Appellant responded affirmatively that he understood each right.

_____

[3] *See* TEX. CODE CRIM. PROC. ANN. art. 38.22, § 2(a) (Vernon 2005).

Sergeant McCoy asked appellant if he felt comfortable conversing in English. Appellant indicated that he was comfortable speaking English. Although appellant indicated that he was comfortable communicating in English, Sergeant McCoy had Deputy M. Elizondo, who speaks Spanish, in the room while appellant gave his statement. Sergeant McCoy made appellant aware that Deputy Elizondo was there to translate if needed. At no time did appellant request Deputy Elizondo's assistance in communicating with Sergeant McCoy.

Appellant gave a statement in English to Sergeant McCoy regarding what had occurred between him and Mary. While appellant spoke, Sergeant McCoy typed appellant's statement on a computer. In his statement, appellant admitted to the allegations supporting the later-filed charge of aggravated sexual assault.

After it was completed, Sergeant McCoy gave a hard copy of the statement to appellant. Sergeant McCoy read the statement to appellant in English as appellant followed along on his own copy. The written statement also listed the statutory rights that Sergeant McCoy had earlier read to appellant. Sergeant McCoy then took the additional step of having Deputy Elizondo read the statement to appellant in Spanish while appellant followed along in English on his copy.

Although an audio recording of appellant's statement was not made, Deputy Elizondo's Spanish translation of the appellant's written statement was recorded. Deputy Elizondo also translated the statutory rights listed in the statement. After

4

Deputy Elizondo read the statement, appellant indicated that he understood what had been read, initialed each paragraph, and signed the statement.

Appellant was charged with the offense of aggravated sexual assault. Before trial, appellant filed a motion to suppress his statement. In his motion, appellant asserted that his statement was not voluntarily given, in violation of Code of Criminal Procedure article 38.21.[4] He alleged that he had not been advised of his constitutional and statutory rights in accordance with Code of Criminal Procedure article 38.22, section 2.[5]

Appellant's motion to suppress was carried with the case. During trial, outside the presence of the jury, the trial court conducted a hearing on the motion to suppress. Appellant testified for the limited purpose of the suppression motion. Sergeant McCoy and Deputy Elizondo also testified at the hearing.

At the suppression hearing, appellant admitted into evidence the audio recording of Deputy Elizondo translating appellant's statement into Spanish, including the officer's Spanish translation of the statutory warnings given to appellant. Appellant also admitted into evidence a written transcript translating into English Deputy Elizondo's Spanish translation of the statement and the statutory warnings.

---

[4]     *See* TEX. CODE CRIM. PROC. ANN. art. 38.21 (Vernon 2005).

[5]     *See id.* art. 38.22, § 2.

At the end of the hearing, the trial court denied appellant's motion to suppress. The trial court also issued written findings of fact and conclusions of law. The trial court determined, inter alia, that appellant was advised of his constitutional and statutory rights before giving his statement to Sergeant McCoy. The court also found that appellant acknowledged and understood each of those rights. The trial court further determined that appellant voluntarily and freely gave his statement to Sergeant McCoy after waiving his rights as set out in article 38.22. The trial court found that Sergeant McCoy and Deputy Elizondo testified truthfully. The court permitted appellant's statement to be admitted into evidence at trial.

The jury found appellant guilty of the offense of aggravated sexual assault and assessed appellant's punishment at 35 years in prison. This appeal followed.

Appellant identifies four issues on appeal. In these issues, appellant challenges the trial court's denial of his motion to suppress and contends that the trial court erred by admitting certain evidence.

## Motion to Suppress

In his first issue, appellant contends that the trial court erred when it denied his motion to suppress his written statement.

## A.    Standard of Review

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). We afford almost total deference to a trial court's determination of historical facts. *Id.* The trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Id.* When a trial court makes written findings of fact, as it did in the instant case, a reviewing court must examine the record in the light most favorable to the ruling and uphold those fact findings so long as they are supported by the record. *See     id.* We then proceed to a de novo determination of the legal significance of the facts as found by the trial court. *See Derichsweiler v. State*, 348 S.W.3d 906, 913 (Tex. Crim. App. 2011).

## B.    Analysis

Code of Criminal Procedure article 38.21 provides that the statement of an accused may be used in evidence against him "if it appears that the same was freely and voluntarily made without compulsion or persuasion, under the rules hereafter prescribed." TEX. CODE CRIM. PROC. ANN. art. 38.21 (Vernon 2005). In *Miranda v. Arizona*, the United States Supreme Court held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of

7

procedural safeguards effective to secure the privilege against self-incrimination." 384 U.S. 436, 444, 86 S. Ct. 1602, 1612 (1966). These safeguards are codified in Texas Code of Criminal Procedure article 38.22. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22 (Vernon 2005).

Article 38.22, section 2, pertains to the taking of a written statement by a defendant in custody. Section 2 provides as follows:

> No written statement made by an accused as a result of custodial interrogation is admissible as evidence against him in any criminal proceeding unless it is shown on the face of the statement that:
>
> (a) the accused, prior to making the statement, either received from a magistrate the warning provided in Article 15.17 of this code or received from the person to whom the statement is made a warning that:
>> (1) he has the right to remain silent and not make any statement at all and that any statement he makes may be used against him at his trial;
>>
>> (2) any statement he makes may be used as evidence against him in court;
>>
>> (3) he has the right to have a lawyer present to advise him prior to and during any questioning;
>>
>> (4) if he is unable to employ a lawyer, he has the right to have a lawyer appointed to advise him prior to and during any questioning; and
>>
>> (5) he has the right to terminate the interview at any time; and

(b) the accused, prior to and during the making of the statement, knowingly, intelligently, and voluntarily waived the rights set out in the warning prescribed by Subsection (a) of this section.

TEX. CODE CRIM. PROC. ANN. art. 38.22, § 2.

In his brief, appellant contends that he did not voluntarily waive his statutory rights when he gave his statement because he did not understand his rights. The first portion of appellant's statement reads that

Prior to making this statement, I have been warned by [Sergeant McCoy] . . . , the person to whom this statement is made, that:

1.     I have the right to remain silent and not make any statement at all and that any statement I make may and probably will be used against me at my trial;

2.     Any statement I make may be used as evidence against me in court;

3.     I have the right to have a lawyer present to advise me prior to and during any questioning;

4.     If I am unable to employ a lawyer, I have the right to have a lawyer appointed to advise me prior to and during any questioning; and

5.     I have the right to terminate the interview at any time.

Appellant initialed the paragraph stating that he had been advised of his rights by Sergeant McCoy. Appellant also initialed each of the five rights.

On appeal, appellant contends that he did not understand his rights because Deputy Elizondo's Spanish translation of the five statutory rights—given to appellant after he had made his statement to Sergeant McCoy—did not accurately reflect the actual language of article 38.22, section 2(a). Appellant's analysis does

9

not take into account Sergeant McCoy's and Deputy Elizondo's testimony at the suppression hearing indicating that appellant understood his rights when informed of those rights in English.

Sergeant McCoy testified that he advised appellant of his statutory rights before appellant gave his statement. After Sergeant McCoy stated each right, appellant acknowledged that he understood the right.

Sergeant McCoy also testified that he read appellant's statement to him after it was typed. Sergeant McCoy testified that the five statutory rights are preprinted in the template that he used to type appellant's statement. The first portion of the statement contains the statutory rights. While the officer read the statement, appellant followed along in English on his own copy. It was after Sergeant McCoy had read the written statement—and statutory rights contained therein—to appellant in English that Deputy Elizondo read the statement and statutory rights to appellant in Spanish.

Sergeant McCoy also testified that appellant indicated at the beginning of the interview that he felt comfortable speaking in English. Sergeant McCoy stated that he and appellant had a conversation in English. Sergeant McCoy testified that he asked appellant questions, and appellant responded. In turn, appellant asked Sergeant McCoy questions in English, and the officer responded. Although he was present while appellant gave his statement, appellant never asked Deputy Elizondo

10

to translated for him during the one-and-one-half hour interview. Sergeant McCoy's testimony indicated that he requested Deputy Elizondo to translate the statement to appellant only as an "extra step."

Deputy Elizondo testified that he was in the room with appellant and Sergeant McCoy during the entire interview. He stated that, after Sergeant McCoy read appellant's rights to him in English, appellant indicated that he understood each of the rights. Although the officer acknowledged that appellant had said that he understood Spanish better than English, Deputy Elizondo testified that appellant was able to communicate in English. He also confirmed that appellant had not asked him to translate anything.

At the suppression hearing, appellant testified through a court interpreter. He stated that he did not understand what Sergeant McCoy had said to him during the interview. On cross-examination, the State asked appellant whether appellant had asked Sergeant McCoy to clarify any questions. Appellant stated that Sergeant McCoy would not "let him" do so. Appellant testified that he told Sergeant McCoy that he understood Spanish better than English and that he preferred Spanish. Appellant also stated that he did not remember much of what had been said to him or what documents had been given to him during the questioning. Appellant testified that he does speak English, but he speaks it mostly for work. He stated that he does not know English "related to law." He testified that he took

11

his commercial driver's license test in Spanish. In line with this testimony, appellant's statement itself also contains the following: "I can speak English and read some of it also, but I speak Spanish and read it better."

At most, the evidence at the suppression hearing showed that appellant understood Spanish better than English. However, a showing was not made that appellant did not comprehend English sufficiently to understand his statutory rights and to voluntarily waive those rights. To the contrary, Sergeant McCoy's and Deputy Elizondo's testimony support a finding that appellant understood each of his statutory rights when they were provided to him in English. As the arbiter of the facts, the trial court was entitled to believe the testimony of Sergeant McCoy and Deputy Elizondo and to disbelieve appellant's testimony. *See Valtierra*, 310 S.W.3d at 447. Because the record supports a finding that appellant understood his rights when they were provided to him in English, it is not significant whether Deputy Elizondo properly translated the statutory rights from English to Spanish.

We hold that appellant has not shown that the trial court abused its discretion when it denied his motion to suppress his written statement. We overrule appellant's first issue.

**Evidentiary Rulings**

Appellant phrases his second, third, and fourth issues as challenges to the trial court's admission of evidence.

12

## A. Admission of Audio Recording

In his second and third issues, appellant complains of the trial court's admission of the audio recording of Deputy Elizondo's Spanish translation of appellant's statement, including the statutory warnings found within the written statement. The audio recording was admitted by appellant at trial; it is Defendant's Exhibit 4. Appellant also admitted a translation transcript of the recording that was certified by a state-licensed court interpreter; it is Defendant's Exhibit 3.

Appellant asserts that the recording was inadmissible (1) because it was not translated by a certified interpreter and (2) because the record contains no affidavit setting out the qualifications of the interpreter and certifying that the translation is fair and accurate. *See Leal v. State*, 782 S.W.2d 844, 849 (Tex. Crim. App. 1989) (holding that admission of a recorded conversation in a foreign language is analogous to testimony by a non-English speaker and the safeguards of article 38.30 of the Code of Criminal Procedure apply); *see also* TEX. R. EVID. 1009(a) (providing, in part, "A translation of foreign language documents shall be admissible upon the affidavit of a qualified translator setting forth the qualifications of the translator and certifying that the translation is fair and accurate").

13

As pointed out by the State, "[A] party cannot take advantage of an error that it invited or caused." *Woodall v. State*, 336 S.W.3d 634, 644 (Tex. Crim. App. 2011). Appellant complains of the audio recording and the transcript that he introduced at trial. The invited error doctrine estops appellant from complaining on appeal about any perceived error concerning admission of this evidence.[6] *See Prystash v. State*, 3 S.W.3d 522, 531 (Tex. Crim. App. 1999) ("Just as the law of entrapment estops the State from making an offense of conduct that it induced, the law of invited error estops a party from making an appellate error of an action it induced.").

We overrule appellant's second and third issues.

## B. Signing of Appellant's Statement

In his fourth issue, appellant contends that "the trial court erred when it admitted a typed statement witnessed only by peace officers."

We review a trial court's decision to admit or exclude evidence for abuse of discretion. *See Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). A trial court abuses its discretion only if its decision is "so clearly wrong as to lie outside the zone within which reasonable people might disagree." *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008).

Article 38.22, section 1, provides:

---

[6] Appellant also does not direct us to where he objected on the grounds that he now raises on appeal. Thus, such objections are waived. *See* TEX. R. APP. P. 33.1(a).

14

In this article, a written statement of an accused means a statement signed by the accused or a statement made by the accused in his own handwriting or, if the accused is unable to write, a statement bearing his mark, when the mark has been witnessed by a person other than a peace officer.

TEX. CODE CRIM. PROC. ANN. art. 38.22, § 1.

Citing section 1, appellant contends that, because he did not understand English, could not write English, and did not physically write his statement, the statement must contain "his mark" and be witnessed by someone other than a peace officer. Here, the record shows that appellant signed his name to his statement; he did not make his mark. His signature was witnessed by a peace officer, Deputy J. Roberts. Thus, appellant's statement was a "written statement" as contemplated by section 1 because it was "a statement signed by the accused." *See id.*

Article 38.22, section 1 requires that a statement be witnessed by someone other than a peace officer only when an accused uses his mark. *See id.* Section 1 does not require that, as in this case, an accused's signature to be witnessed by someone other than a peace officer when he signs his name rather than using his mark. *See id.*

Appellant has not shown that the trial court abused its discretion when it admitted his written statement without the statement being witnessed by someone other than a peace officer. We overrule appellant's fourth issue.

15

## Conclusion

We affirm the judgment of the trial court.

Laura Carter Higley
Justice

Panel consists of Justices Keyes, Higley, and Bland.

Do not publish.   TEX. R. APP. P. 47.2(b).

16