

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-22-00435-CR

Eric **WILLRICH**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 399th Judicial District Court, Bexar County, Texas
Trial Court No. 2019CR11728A
Honorable Frank J. Castro, Judge Presiding[1]

Opinion by:    Irene Rios, Justice

Sitting:    Irene Rios, Justice
    Beth Watkins, Justice
    Lori I. Valenzuela, Justice

Delivered and Filed: March 13, 2024

AFFIRMED

After the trial court denied appellant Eric Willrich's pretrial motion to suppress, Willrich pled nolo contendere to the possession of a controlled substance. The trial court sentenced Willrich to six years' imprisonment pursuant to a plea bargain agreement. In a single issue, Willrich asserts the trial court erred in denying his motion to suppress because he was illegally detained, arrested, and searched. *See* U.S. CONST. amend. IV; *see also* TEX. CONST. art. I, § 9. We affirm.

---

[1] The Honorable Frank J. Castro presided over Eric Willrich's plea proceeding and signed the Final Judgment of Conviction by Court—Waiver of Jury Trial. The Honorable Andrew W. Carruthers presided over the suppression proceedings and made the findings of fact and conclusions of law.

## BACKGROUND

Willrich sought to suppress drugs discovered from a warrantless search and his warrantless arrest. At the suppression hearing, the State presented three witnesses, Detective Cameron Helle, Officer Alejandro Sandoval, and Officer Franklin Millstid, all with the San Antonio Police Department.

Detective Helle, a narcotics detective, testified that on the day in question, he was conducting surveillance on a suspected narcotics house from which police had seized narcotics in the past. According to Detective Helle, Paul White arrived at the house in a pick-up truck, exited the truck, and went inside the house for a short time. Soon thereafter, White and Alejandro Alvarado came out of the house and got into the truck. Detective Helle followed the truck, now driven by Alvarado, to a shopping complex referred to as the Quarry. Alvarado drove slowly through various parking lots, parked for a while, then drove to another parking lot and parked away from the vehicles parked at the business. Neither White nor Alvarado exited the truck. Rather, after being parked for a short time, Detective Helle saw another vehicle park directly next to the passenger side of the truck. The driver of that vehicle, Willrich, then immediately exited his vehicle and got into the back seat passenger-side of the truck.

Detective Helle then explained that he saw White, who was sitting in the front passenger's seat, turning his body around and moving his arms back and forth with Willrich, who was still seated in the back. Detective Helle acknowledged he did not witness an actual hand-to-hand transaction. However, based on his surveillance and narcotics investigation experience, the vehicles' parked locations next to each other and away from other vehicles, and Willrich's immediate entry into the backseat of the truck, "it appeared to [Detective Helle] that they were conducting a hand-to-hand transaction"—a "narcotics transaction . . . inside that truck." At that time, Detective Helle requested uniformed police officers approach the occupants of the truck.

Just prior to the officers approaching the truck, Detective Helle saw White reach down. Detective Helle testified this is "indicative of potentially trying to conceal something or discard something." At some point, Willrich had moved over in the backseat behind Alvarado. The uniformed officers approached the truck, contacting the occupants. Detective Helle then followed, opened the front passenger-side door and asked White to exit, and notified him he was being detained for a narcotics investigation. During this time, Detective Helle observed a plastic baggie containing a white powdery substance on the front passenger-side floorboard underneath the front passenger seat. Detective Helle testified the area where the baggie was located was within both Whites's and Willrich's reach. Detective Helle also found on the back passenger's seat and floorboard a "white powdery . . . looked like crack crumbs is the best way to describe it" substance.

White informed the officers that Willrich was his "drug dealer[,]" and that he was in the parking lot to "buy drugs." White was buying $1,000 worth of crack. Detective Helle also spoke to Alvarado, who told police that Willrich was in the truck to give White crack, but Alvarado thought White had given Willrich $2,000.

Officer Sandoval and Officer Millstid testified they waited nearby in the Quarry until Detective Helle directed them to drive their marked patrol units up to the scene. According to Officer Sandoval, when he pulled his car on the right side of the truck, he saw three people in the truck, and Willrich was seated in the back seat behind front passenger White. Officer Sandoval received permission from White to search his person. According to Officer Sandoval, he found a crystal or white rock-like substance in White's pocket, and after claiming it was salt, White later admitted it was crack cocaine. Officer Sandoval arrested White and read him his warnings before Detective Helle questioned him. Willrich gave Officer Sandoval permission to retrieve his Texas ID from his car parked beside the truck when Officer Sandoval asked for Willrich's identification.

According to Officer Millstid, when he arrived on the scene, he saw the car parked to the right, or passenger-side of the truck. As Officer Millstid approached the driver's side of the truck, he noticed Alvarado and White in the front seats, and Willrich in the back seat, now seated behind the driver. Alvarado gave Officer Millstid his Texas ID. Alvarado did not have a driver's license. Officer Millstid testified he read Willrich his warnings and found approximately $2,000 in cash on Willrich's person.

Willrich moved to suppress all the evidence obtained contending he was unlawfully detained and then unlawfully arrested. The trial court denied Willrich's motion to suppress and made several oral findings of fact—which followed the testimonies of Detective Helle, Officer Sandoval, and Officer Millstid, and their accounts of the events leading up to the search of the truck, the results of the search, and Willrich's arrest and subsequent search. The trial court also made oral conclusions of law, including:

1. Willrich, as "merely a passenger in the [truck] from which the crack cocaine was seized," had no expectation of privacy in the truck and lacked standing to challenge the search.

2. "Considering the totality of the circumstances, there was probable cause to arrest [Willrich] for possession of a controlled substance."

3. The approximate $2,000 in cash found on Willrich's person resulted from a search "incident to a lawful arrest."

In exchange for a plea bargain, Willrich pled nolo contendere to count one of the indictment—possession of a controlled substance with the intent to deliver cocaine in an amount of four grams or more but less than two hundred grams, a first-degree felony.[2] The trial court accepted Willrich's plea, and pursuant to the agreement, sentenced Willrich to six years'

---

[2] We note that despite the plea bargain agreement referring to Willrich's plea pertaining to count one of the indictment—possession of a controlled substance with the intent to deliver cocaine in an amount of four grams or more but less than two hundred grams, a first-degree felony—the trial court's final judgment reflects Willrich was only convicted of possessing cocaine in an amount of four grams or more but less than two hundred grams, a second-degree felony. *Compare* TEX. HEALTH & SAFETY CODE ANN. § 481.112(a), (d), *with id.* § 481.115(a), (d).

imprisonment. Willrich subsequently appealed the trial court's denial of his pretrial motion to suppress.

## STANDARD OF REVIEW

We review a trial court's ruling on a motion to suppress using a bifurcated standard of review. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). First, we give almost total deference to the trial court's factual determinations. *Id*. The trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Id*. The trial court is entitled to believe or disbelieve all or part of the witness's testimony—even if that testimony is uncontroverted—because the trial court has the opportunity to observe the witness's demeanor and appearance. *Id*.

Second, we review de novo the application of law to the facts, and we will affirm a ruling that is "reasonably supported by the record and is correct on any theory of law applicable to the case." *Id*. at 447–48. If the trial court makes express findings of fact, as it has here, we view the evidence in the light most favorable to the trial court's ruling and determine whether the evidence supports the factual findings. *Id.* at 447.

## APPLICABLE LAW

The Fourth Amendment protects against unreasonable searches and seizures. *See* U.S. CONST. amend. IV; *State v. Weaver*, 349 S.W.3d 521, 525 (Tex. Crim. App. 2011). "Under the Fourth Amendment, a brief investigatory detention must be justified by reasonable suspicion." *Matthews v. State*, 431 S.W.3d 596, 602–03 (Tex. Crim. App. 2014) (citations omitted). "A police officer has reasonable suspicion to detain if he has specific, articulable facts that, combined with rational inferences from those facts, would lead him reasonably to conclude that the person detained is, has been, or soon will be engaged in criminal activity." *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011) (citing *Terry v. Ohio*, 392 U.S. 1, 21–22 (1968)) (other

citations omitted). This is an objective standard that disregards the officer's actual subjective intent and instead looks to whether an objectively justifiable basis existed for the detention. *See id*.

We also look to the totality of the circumstances, and if combined they "reasonably suggest the imminence of criminal conduct, an investigative detention is justified." *Id*. In other words, we focus on whether the totality of reliable information—specific, articulable facts combined with reasonable inferences derived from those facts—leads to the reasonable conclusion that the appellant was committing, or soon would be engaged in some type of criminal activity. *See id*. at 915–16.

Upon lawful arrest, the search of the person is justified by the need to assure officer safety and the need to protect evidence from concealment or destruction without any need for a particularized showing that weapons or evidence are likely to be found. *See Price v. State*, 662 S.W.3d 428, 433 (Tex. Crim. App. 2020) (citing *United States. v. Robinson*, 414 U.S. 218, 235 (1973)).

**ANALYSIS**

In this case, Detective Helle's testimony regarding (1) observing White and Alvarado leaving a house known for narcotic transactions and then traveling to a shopping complex and parking away from the business's regular traffic, (2) coupled with seeing another car park next to the truck and watching Willrich immediately get into the back seat of the truck with White and Alvarado, and (3) then watching White's arm movements and turning back towards Willrich in what appeared to be a hand-to-hand transaction all support Detective Helle's reasonable suspicion that the occupants of the truck, especially White and Willrich, were committing a criminal offense. When considering the observation of the sequence of events, in addition to considering Detective Helle's experience in prior narcotics investigations, Detective Helle had specific, articulable facts that, when combined with reasonable inferences, led him to reasonably conclude that the occupants

were engaging or had engaged in criminal activity and thus he requested the uniformed officers approach the occupants.

Next, Detective Helle's testimony that as the uniformed officers approached the truck, he saw White reach down, and that in Detective Helle's experience that indicates a person hiding something, further supported reasonable suspicion that a drug offense was occurring or had occurred. Both Detective Helle and Officer Sandoval observed Willrich sitting behind White. This, in addition to Detective Helle stating the plastic baggie containing cocaine was within Willrich's reach as well as White's reach, supports Willrich's direct involvement in the alleged offense.

Crack cocaine was found in White's pocket, and he informed Detective Helle that Willrich was his drug dealer and that he was there to buy drugs from Willrich. Alvarado also claimed Willrich was there to sell White drugs. Evidence further supported that White paid Willrich at least $1,000 for the drugs. The evidence, including Detective Helle's testimony that he saw "crack crumbs" in the back seat where Willrich sat, support the trial court's findings of fact and conclusions of law that under the circumstances, law enforcement had reasonable suspicion to detain and probable cause to arrest Willrich for possession of a controlled substance. *Derichsweiler*, 348 S.W.3d at 914; *see also Beck v. Ohio*, 379 U.S. 89, 91 (1964) (establishing that probable cause to arrest exists when, at the moment of the arrest, the facts and circumstances within the arresting officer's knowledge from reasonably trustworthy information were sufficient to warrant a prudent man in believing that the particular person had committed or was committing an offense).

Because officers had reasonable suspicion to detain and probable cause to arrest Willrich, officers were justified in conducting a search incident to arrest. *See Price*, 662 S.W.3d at 433. Therefore, we hold the trial court did not err in denying Willrich's pretrial motion to suppress. *See Valtierra*, 310 S.W.3d at 447–48.

We overrule Willrich's appellate issue.

## CONCLUSION

We conclude the trial court did not err in denying Willrich's motion to suppress. Therefore, we affirm the trial court's judgment.

Irene Rios, Justice

DO NOT PUBLISH