**Opinion issued June 16, 2026**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-24-00563-CR

## NO. 01-24-00596-CR

———————————

**JUAN DAVID ALMANZA, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 228th District Court**
**Harris County, Texas**
**Trial Court Case Nos. 1625009 & 1625010**

## MEMORANDUM OPINION

After celebrating St. Patrick's Day, Juan David Almanza drove his truck the wrong way on an interstate, causing a collision that killed one person and seriously

injured another. He was charged with intoxication manslaughter[1] and intoxication assault.[2] The jury found him guilty of both offenses, and he was sentenced to 11 years' imprisonment for intoxication manslaughter and 2 years' imprisonment for intoxication assault with the sentences running concurrently.

On appeal, he contends that the trial court erred in admitting toxicology evidence. He alleged the evidence was unreliable due to a recall affecting the test tube used to draw his blood. The State responds that Almanza did not preserve this issue for our review because he did not obtain a ruling on his pretrial motion to suppress and he did not object when the evidence was later admitted at trial. Almanza responds that the record shows by implication that the motion to suppress was denied. We hold that even assuming the motion to suppress was denied and that the issue was preserved for our review, the trial court did not err in admitting the evidence at trial. We affirm.

## Background

On St. Patrick's Day in 2019, Almanza went out to bars with his cousin and consumed alcohol. Around 2:00 a.m., he drove the wrong way on Interstate 45 in

---

[1] A person commits intoxication manslaughter if the person operates a motor vehicle in a public place and is intoxicated and by reason of that intoxication causes the death of another by accident or mistake. TEX. PENAL CODE § 49.08.

[2] A person commits intoxication assault if the person, by accident or mistake, while operating a motor vehicle in a public place while intoxicated, by reason of that intoxication causes serious bodily injury to another. TEX. PENAL CODE § 49.07.

2

Houston and collided head-on with another vehicle. One passenger in the other vehicle died and the other was seriously injured.

Almanza was transported to the hospital. At the hospital, law enforcement obtained a search warrant for Almanza's blood, which was collected at 6:53 a.m. The next day, the sample was transferred to the Houston Forensic Sciences Center ("HFSC") where it was stored in a refrigerator. The sample was tested a month later, and HFSC produced a report in May 2019 opining that the blood alcohol concentration in the sample was 0.191. Later that month, the manufacturer of the tube used to collect Almanza's blood sample issued a recall because some of its tubes had no additive in the tube.

Almanza was indicted for intoxication manslaughter and intoxication assault. He proceeded to trial.

## A.    Motion to Suppress

Almanza filed a pretrial motion to suppress the toxicology report based on alleged defects in the blood collection process. Almanza argued that the test tubes used were the subject of recall and did not meet reliability standards. Specifically, Almanza argued that due to the recall, the vials used to contain his blood sample could have resulted in the potential for contamination or artificially inflated blood-alcohol results.

The trial court held a hearing on the motion to suppress where the Director of Quality Management for the manufacturer of the vials testified. She described the recall process and its extent. She stated that at most, approximately 1,500 vials were affected by a manufacturing error and about 252,000 vials were subject to recall. The manufacturer received 399 returned tubes pursuant to the recall, and of those, 298 were defective. The defect among the tubes returned was absence of any anticoagulant and preservative powder in the tube. She testified that she reviewed body camera footage of Almanza's blood draw showing that there was powder present in the tubes used to collect his sample.

The manager of the toxicology section of HFSC testified that there was a manufacturer's recall of a small portion of a lot of test tubes that contained no additive. The recall information included that if a sample was stored for more than two days, the result for blood-alcohol determination may not be accurate. The manager stated that Almanza's whole blood sample was tested on April 9, 2019. He also testified that the ethanol concentration in a sample without additives that was refrigerated would stay the same or decrease over time. He testified that contamination or failure to refrigerate could cause concentration to increase. The HFSC manager testified that Almanza's sample was refrigerated, and there was no evidence of contamination.

Amanda Culbertson, an expert in forensic toxicology and forensic chemistry, testified for the defense. She opined that there were fundamental flaws in the testing procedure, and opined that no police lab should test blood from the recalled blood vials.

At the end of the hearing, the trial court stated that it "need[]ed to think about this." The clerk's record does not contain an order on the motion.

## B.     Jury Trial

Almanza proceeded to a jury trial.[3] A different trial judge presided over the trial than the judge who had presided over the motion to suppress hearing. During a pretrial discussion of Almanza's motion in limine seeking to exclude, due to the recall, mention of blood vials drawn pursuant to a warrant and analyzed by HFSC, the State responded that the request was moot "because that was already addressed at the suppression hearing." When the State introduced the toxicology evidence at trial, Almanza's counsel stated that he had no objection. The evidence was admitted by the trial court. After trial, the jury convicted Almanza of both charges. He appealed.

---

[3]     His theory at trial was that the blood evidence was either contaminated or otherwise unreliable and that he was involuntarily intoxicated on the night of the crash.

## Admission of Evidence

On appeal, Almanza argues that the trial court erred in admitting blood toxicology evidence. The State responds that Almanza waived his challenge because he did not obtain a ruling on the motion to suppress and he did not object when the evidence was admitted at trial. In his reply brief, Almanza contends that though it is not in the record, the motion was denied, and the parties proceeded to trial under that belief.[4] Assuming without deciding that the trial court denied the motion and the issue was preserved for our review, we conclude that the trial court did not err in admitting the evidence at trial.

### A. Standard of Review

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review, reviewing the factual findings for an abuse of discretion and the application of the law to facts de novo. *Lerma v. State*, 543 S.W.3d 184, 189–90 (Tex. Crim. App. 2018). We give deference to the trial court's factual determinations because the trial court is the sole trier of fact and judge of witness credibility and the weight to be given their testimony. *Id.*; *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). Our deferential review also applies to the trial court's conclusions regarding mixed questions of law and fact that turn on

---

[4] To preserve error for our review, the defendant must either file a motion to suppress and obtain a ruling on the motion or timely object when the State offers the evidence at trial. *See* Tex. R. App. P. 33.1(a); *Garza v. State*, 126 S.W.3d 79, 81–82 (Tex. Crim. App. 2004) (stating record must show that appellant made a timely request, objection, or motion and that trial court ruled on it).

credibility or demeanor. *State v. Ortiz*, 382 S.W.3d 367, 372 (Tex. Crim. App. 2012).

Scientific testimony must be both reliable and relevant to assist the trier of fact to reach a conclusion in a case. *Kelly v. State*, 824 S.W.2d 568, 572 (Tex. Crim. App. 1992); *see* TEX. R. EVID. 702. The proponent of the evidence bears the burden to demonstrate by clear and convincing evidence that scientific evidence is reliable. *Jackson v. State*, 17 S.W.3d 664, 670 (Tex. Crim. App. 2000). This is achieved by demonstrating: (1) the validity of the underlying scientific theory; (2) the validity of the technique applying the theory; and (3) the proper application of the technique in the specific instance. *Id.* (citing *Kelly*, 824 S.W.2d at 573).

## B.    Analysis

The evidence presented at the motion to suppress hearing supported admission. The test tube manufacturer's director of quality management testified that the recall affected a very small number of manufactured tubes. The uniform defect among the defective tubes was the absence of any preservative or anticoagulant powder. Law enforcement body camera footage showed that there was powder present in the tubes used to collect Almanza's sample. As the trier of fact, the trial court could weigh the testimony from Almanza's expert with the testimony from the tube manufacturer and HFSC director, and choose to believe all or any part of any witness's testimony. In denying the motion to suppress, the trial

court could have reasonably concluded that the evidence was admissible because the tubes used to collect Almanza's sample were unaffected by the defect that formed the basis of the recall.[5]

We overrule Almanza's issue on appeal.

## Conclusion

We affirm the judgment of the trial court.

Susanna Dokupil
Justice

Panel consists of Justices Rivas-Molloy, Johnson, and Dokupil.

Do not publish. TEX. R. APP. P. 47.2(b).

---

[5] To the extent that the trial court did not rule on the motion to suppress, the court did not err in admitting the evidence at trial. At trial, a law enforcement officer testified that he observed anticoagulant in the test tubes prior to the draw. An HFSC forensic scientist testified that the manufacturer recalled a small number of tubes that did not have proper anticoagulation and preservative powder inside them. She stated that Almanza's blood appeared normal with no clotting when she tested it, which indicated the presence of anticoagulant in the tube. The record reflects that Almanza's specimen was collected and tested according to existing protocol to prevent contamination. Questions about the reliability of Almanza's blood specimen considering the recall go to the weight of the evidence, rather than admissibility. *See Yanez v. State*, No. 07-23-00161-CR, 2024 WL 1814058, at *5 (Tex. App.—Amarillo Apr. 25, 2024, no pet.) (mem. op., not designated for publication) (stating question of defect in tube after recall likely goes to weight, not admissibility of blood toxicology evidence).