In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-12-00279-CR
_____

CRAIG STEPHEN HOARD, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 359th District Court
Montgomery County, Texas
Trial Cause No. 12-02-01753 CR

MEMORANDUM OPINION

A jury convicted Craig Stephen Hoard of sexual performance by a child (count one), indecency with a child by sexual exposure (count two), and five counts of possession of child pornography (counts three through seven). In three appellate issues, Hoard challenges the admission of extraneous-offense evidence and expert testimony and the trial court's denial of his motion to suppress. We affirm the trial court's judgment.

Extraneous-Offense Evidence

In issue one, Hoard contends that the trial court abused its discretion by allowing the State to present testimony and evidence of extraneous offenses. Evidence of other crimes, wrongs, or acts may be admissible as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Tex. R. Evid. 404(b). Even relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Tex. R. Evid. 403. We review a trial court's admission of extraneous-offense evidence under an abuse of discretion standard. *Rankin v. State*, 974 S.W.2d 707, 718 (Tex. Crim. App. 1998) (op. on reh'g). Error may not be predicated upon a ruling which admits evidence unless a party's substantial rights are affected. Tex. R. Evid. 103(a); *see* Tex. R. App. P. 44.2(b). We will not reverse if, after examining the entire record, we have fair assurance that the error did not influence the jury or had but slight effect. *Taylor v. State*, 268 S.W.3d 571, 592 (Tex. Crim. App. 2008).

According to the record, several images of children were found on electronic devices belonging to Hoard. State's witness Leonard Keiser, a digital forensic examiner, testified that he analyzed Hoard's computer, thumb drive, and iPod, from which he obtained several images. Keiser opined that the images were purposefully placed on Hoard's devices. On cross-examination, Keiser admitted

that he cannot tell how the images were placed on the devices or who put the images on the devices. Keiser also testified that images can be placed on a computer without the owner's knowledge.

The State argued that the defense's cross-examination of Keiser opened the door to evidence of extraneous offenses for purposes of identity, intent, knowledge, and absence of mistake or accident. The State proffered testimony regarding two extraneous offenses. The defense argued that identity and knowledge are not controverted issues and that the probative value of the State's proffered evidence was outweighed by the danger of unfair prejudice. The trial court found the evidence admissible to prove identity and intent regarding counts one and two and to prove intent and absence of mistake or accident as to counts three through seven. The trial court found that the evidence's probative value was not outweighed by the danger of unfair prejudice.

The trial court instructed the jury that extraneous-offense evidence could only be considered for purposes of identity, intent, knowledge, and absence of mistake or accident. C.C., a ten-year-old male, testified that in June 2010, a man approached him in the restroom at Incredible Pizza and asked if he wanted to make some money and watch a video on the man's iPod. When C.C. tried to leave the restroom, the man grabbed him but eventually let go and C.C. left the restroom.

3

C.C. identified Hoard as the man in the restroom. C.C.'s grandmother testified that C.C. appeared frightened when he emerged from the restroom and C.C. told her what happened. She testified that C.C. pointed the man out to her and she identified Hoard as that man.

N.R., a twelve-year-old male, testified that in June 2010, a man approached him in the restroom at Wal-Mart and asked for N.R.'s name. The man asked N.R. if he wanted to make some money by going into a stall and letting him take nude photographs of N.R. N.R. declined, agreed not to tell anyone, left the restroom, and then told his mother what had happened. N.R. identified Hoard as the man in the restroom. Brad Bell, the Wal-Mart assistant manager, testified that surveillance cameras captured the man entering the restroom, N.R. entering the restroom, the man leaving the restroom and reentering the restroom, and N.R. leaving the restroom followed by the man. Bell recognized the man as someone who had submitted an employment application. Bell testified that the man's name was "Craig Hoard."

Assuming, without deciding, that the complained-of testimony qualifies as inadmissible extraneous-offense evidence and the trial court abused its discretion by admitting this testimony into evidence, we cannot say that Hoard's substantial rights were affected. *See* Tex. R. Evid. 103(a); *see also* Tex. R. App. P. 44.2(b).

4

Testimony regarding the two extraneous offenses did not consume an inordinate amount of time during trial. The State focused the majority of its closing argument on the evidence establishing the charged offenses. The trial court instructed the jury, both verbally and in writing in the jury charge, that it could only consider evidence of extraneous offenses for purposes of identity, intent, knowledge, and absence of mistake or accident. The trial court's limiting instruction minimized any impermissible inference of character conformity. *See Lane v. State*, 933 S.W.2d 504, 520 (Tex. Crim. App. 1996). We presume the jury followed the trial court's instructions. *See Renteria v. State*, 206 S.W.3d 689, 707 (Tex. Crim. App. 2006). Moreover, given the evidence before the jury, it is unlikely that the admission of the complained-of evidence had a substantial effect on the jury's verdict. *See Ladd v. State*, 3 S.W.3d 547, 568 (Tex. Crim. App. 1999). After examining the record as a whole, we have fair assurance that the error, if any, did not influence the jury, or had but slight effect. *See Taylor*, 268 S.W.3d at 592. We overrule issue one.

Expert Testimony

In issue two, Hoard argues that the trial court abused its discretion by allowing Dr. David Self to testify at trial. "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill,

5

experience, training, or education may testify thereto in the form of an opinion or otherwise." Tex. R. Evid. 702. We review the admission of expert testimony for abuse of discretion. *Coble v. State*, 330 S.W.3d 253, 272 (Tex. Crim. App. 2010).

During direct-examination of Dr. Self, a forensic psychologist, the State asked Self to describe his definition of "lewd exhibition of genitals[.]" The defense objected on grounds that the question invaded the province of the jury and did not invite an opinion as required by the Texas Rules of Evidence. The State argued that Self's testimony could help the jury understand an ultimate issue in the case. The trial court ruled that Self could answer basic questions that would educate the jurors, without being specific to Hoard.

Self testified that he is familiar with the connection between images or objects and sexual arousal. Self explained:

> [T]here is not one thing or a set of things that sexually excite people. There's a norm and an average that most people share, but then there are folks that are excited by things that are outside the realm of that norm or average. And so, it's more or less in the eye of the beholder. And what the individual finds erotic -- what they find sexually exciting is how that gets defined.

When asked how a photograph of a child could be sexually stimulating or arousing to someone, Self responded, "only if that person had a desire -- a sexual excitement for small children -- for pre-pubescent children, which is well outside that realm of the norm or average sexual desire."

The record in this case contains evidence that images of children were found on various devices owned by Hoard, that one of Hoard's devices contained a video of Hoard with the victim, and that the images were purposefully placed on these devices. The jury was given the opportunity to review these images. For each of the seven counts, the trial court's charge advised the jury that it is the exclusive judge of the facts proven, of the credibility of the witnesses, and of the weight to be given the witness's testimony. The trial court also advised the jury that it could only find Hoard guilty if it so found beyond a reasonable doubt. Assuming without deciding that the trial court abused its discretion by allowing Self's testimony, the record as a whole gives us fair assurance that the error, if any, did not influence the jury, or had but slight effect. *See Taylor*, 268 S.W.3d at 592. Because Hoard's substantial rights were not affected by any error in the admission of Self's testimony, we overrule issue two. *See* Tex. R. Evid. 103(a); *see also* Tex. R. App. P. 44.2(b).

## Motion to Suppress

In issue three, Hoard challenges the trial court's denial of his motion to suppress evidence seized from his home at the time of his arrest. "We review a trial court's ruling on a motion to suppress under a bifurcated standard of review." *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010).

First, we afford almost total deference to a trial judge's determination of historical facts. The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. He is entitled to believe or disbelieve all or part of the witness's testimony--even if that testimony is uncontroverted--because he has the opportunity to observe the witness's demeanor and appearance.

If the trial judge makes express findings of fact, we view the evidence in the light most favorable to his ruling and determine whether the evidence supports these factual findings. When findings of fact are not entered, we "must view the evidence 'in the light most favorable to the trial court's ruling' and 'assume the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record.'"

Second, we review a trial court's application of the law of search and seizure to the facts *de novo*. We will sustain the trial court's ruling if that ruling is "reasonably supported by the record and is correct on any theory of law applicable to the case."

*Id*. at 447-48 (footnotes omitted).

In his motion to suppress, Hoard sought to exclude evidence seized as the result of his arrest and the search of his home. At the suppression hearing, Detective Jason Waller testified that he obtained a warrant to arrest Hoard. Waller testified that he knocked on the door of the residence and Hoard's brother allowed the officers to enter the home. According to Waller, he intended to arrest Hoard and Hoard was not free to leave, but Hoard was not handcuffed until officers were ready to remove Hoard from the residence. Waller testified that he was there to arrest Hoard for the Wal-Mart incident, but that Hoard volunteered information

8

that he had frightened a child at Incredible Pizza. Hoard also told Waller that he spoke to the child in the Wal-Mart restroom, asked the child if he could take photographs of the child, and must have frightened the child. Before arresting Hoard, Waller asked for and received Hoard's verbal and written consent to search. Waller testified that Hoard never withdrew consent. Hoard gave Waller the passcode to his computer, which contained what Waller described as "lewd conduct[,]" and the officers seized the computer, an iPod, a thumb drive, an art book, and a disc. Waller admitted that he did not give Hoard any *Miranda* warnings and served Hoard with the arrest warrant after they finished speaking.

Waller testified that he also obtained consent to search from Hoard's brother, David. David testified that he opened the door of his home and found officers standing outside with guns, after which he gave the officers admittance into the home that he shared with Hoard. He did not recall officers asking him for consent to search the home, but he testified that he had no problem with the officers being at the home, and he testified to pulling out boxes for the officers to look through. David heard an officer state that Hoard had given consent to search. David testified that Hoard cooperated with police and that he never saw officers behave inappropriately, act forcefully, or place a gun in Hoard's face.

Hoard argued that the arrest warrant was unrelated to the case before the trial court and that officers failed to give *Miranda* warnings to Hoard, which rendered the evidence obtained inadmissible. The trial court found that Hoard's consent was voluntary and denied Hoard's motion to suppress. The trial court's findings of fact and conclusions of law state, in pertinent part, that: (1) Waller obtained Hoard's verbal and written consent to search; (2) Hoard's consent was voluntary; (3) a request for consent to search does not constitute a custodial interrogation; (4) a lack of *Miranda* warnings does not render Hoard's consent involuntary; and (5) the record does not indicate that the consent was involuntary.

When determining whether an accused's consent to search is voluntary, we look to the totality of the circumstances. *Johnson v. State*, 68 S.W.3d 644, 653 (Tex. Crim. App. 2002). An officer is not required to inform a suspect of his *Miranda* rights before obtaining consent to search. *Rayford v. State*, 125 S.W.3d 521, 528 (Tex. Crim. App. 2003). While an officer's failure to inform a suspect that evidence found can be used against him may be a factor to consider, it does not automatically render the suspect's consent involuntary. *Id*.

In this case, the trial court heard testimony that Hoard was not handcuffed and was cooperative. The record does not indicate that officers acted inappropriately or forcefully. The trial court also heard testimony that Hoard

consented, both verbally and in writing, to a search of his home, voluntarily gave officers the passcode for his computer, and at no time withdrew his consent. The written consent form, signed by Hoard, states that consent could be refused and that consent was being freely and voluntarily given. Under these circumstances, the trial court could reasonably conclude that Hoard's consent was voluntary. *See Rayford*, 125 S.W.3d at 528-29; *see also Johnson*, 68 S.W.3d at 653. We overrule issue three and affirm the trial court's judgment.

       AFFIRMED.

_____
STEVE McKEITHEN
Chief Justice

Submitted on August 22, 2013
Opinion Delivered September 18, 2013
Do Not Publish

Before McKeithen, C.J., Kreger and Horton, JJ.