**Opinion issued October 19, 2023**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-21-00636-CR

———————————

**KENDRICK JOHNSON, Appellant**

**V.**

**STATE OF TEXAS, Appellee**

---

**On Appeal from the 183rd District Court**
**Harris County, Texas**
**Trial Court Case No. 1623904**

---

## MEMORANDUM OPINION

Kendrick Johnson appeals his murder conviction. In two issues, Johnson contends the trial court erred by denying his motion to suppress evidence retrieved from a cell phone found near him when he was arrested. Because Johnson abandoned

the cell phone by disclaiming it, we conclude he lacks standing to challenge the constitutionality of the seizure and subsequent search of that device. We affirm.

## Background

A grand jury indicted Johnson for intentionally and knowingly causing the death of Delindsey Mack by shooting Mack with a firearm. The State alleged that Johnson and Mack were members of rival street gangs and that the shooting was retaliatory.

On November 13, 2018, Mack left the high school he attended with two other students, K. Mouton and R. Hale. About a block from campus, Mouton abruptly turned around and began walking back to the school. Around the same time, a black Subaru pulled up on the street to where Mack and Hale were standing. Two masked men holding guns got out of the vehicle and fatally shot Mack before returning to the vehicle and fleeing.

Homicide detectives interviewed Mouton, and she consented to a search of her cell phone. The search revealed Mouton's text message exchange with Johnson coordinating the shooting. In a follow-up interview, Mouton confessed that she had helped Johnson harm Mack and confirmed Johnson's identity in a photograph.

The detectives sought to arrest Johnson on two open warrants for aggravated robbery. Officers drove an unmarked vehicle to a funeral they suspected Johnson

2

would attend. There, they noticed a suspicious gray Jeep. Believing Johnson was inside, they followed the Jeep and then initiated a traffic stop.

J. Tobar was driving the Jeep. Officers found a loaded gun in his jacket pocket and arrested him for unlawfully carrying a weapon. Appellant was in the backseat. Officers arrested him on the open warrants. An officer inventoried the Jeep's contents and discovered several items in the backseat area, including a damaged silver iPhone on the right rear passenger floorboard.

Johnson was taken to the homicide division for a custodial interview. A detective read Johnson his Fifth Amendment rights and asked Johnson questions about his background. Toward the end of the approximately thirty-minute interview, the detective asked Johnson if he "had a phone on [him]" in the Jeep. Johnson shook his head "no." The investigator then specifically asked who had the iPhone with a "blue case."[1] Johnson answered, "I don't know" and "I didn't have no phone on me so it wasn't my phone." The investigator told Johnson that he wanted to find the iPhone's owner because the iPhone was "expensive," and he would put it with Johnson's property if it belonged to Johnson. Johnson told the detective that "they" had asked him about an iPhone when he got out of the Jeep but he did not have one.

---

[1]     Nowhere else in the record is the iPhone identified as having a "blue case." The search warrant for the phone and all witness testimonies identified the phone as being "silver."

3

The investigator asked again if Johnson was "sure [he] didn't leave [an iPhone] in the car." Johnson shook his head and asked to end the interview shortly thereafter.

During the next several months, detectives obtained search warrants for the Jeep, the iPhone, the iPhone's cellular information and location data, and Johnson's social media and iCloud accounts.

Before trial, Johnson claimed the iPhone was his and moved to suppress all evidence obtained from its search and seizure. Among other things, Johnson argued that the search warrant affidavits did not establish probable cause to search the iPhone. At the hearing on the motion, the State emphasized Johnson's statements in the custodial interview denying the iPhone was his as evidence that he had abandoned the device and thus lacked standing to challenge the search and seizure.

The trial court denied Johnson's motion to suppress. On the iPhone, detectives found selfies of Johnson, internet search history related to Mack's murder, and other incriminating information that connected Johnson to the device. The State used the cell phone evidence at trial. The jury found Johnson guilty of the first-degree felony offense of murder and sentenced him to life imprisonment.

**Motion to Suppress**

In his two issues, Johnson argues that the trial court erred by denying his motion to suppress the iPhone evidence because (1) "[t]he incriminating nature of the cell phone was not readily apparent," making the warrantless seizure of the

4

device at the time of his arrest unreasonable; and (2) the search warrant affidavit did not establish probable cause to believe that the iPhone contained evidence of crime, making the subsequent search of the device unreasonable. The State responds that Johnson lacks standing to challenge the seizure and search of the iPhone because he abandoned the device by disclaiming ownership of it. We agree.

## A.     Standard of Review

We review the trial court's ruling on a motion to suppress under a bifurcated standard. *See Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). First, we afford almost total deference to the trial court's determination of historical facts. *Id*. The trial court is the sole factfinder and judge of the credibility of the testimony and evidence at a suppression hearing. *Id*. The trial court may believe or disbelieve all or part of a witness's testimony, even if that testimony is uncontroverted, because it can observe the witness's demeanor and appearance. *Id*. When, as here, findings of fact are not entered into the record, we must assume that the trial court made all findings of fact that support its ruling if the record supports those findings. *Id*.

Second, we review de novo the trial court's application of the law to the facts. *Id*. We will sustain the trial court's ruling if the ruling is reasonably supported by the record and is correct on any theory of law applicable to the case. *Id*. at 447–48.

**B.     Standing**

The Fourth Amendment of the United States Constitution protects individuals from unreasonable searches and seizures. *State v. Huse*, 491 S.W.3d 833, 839 (Tex. Crim. App. 2016) ("Under the Fourth Amendment, '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures shall not be violated[.]'" (quoting U.S. CONST. amend. IV)). Because the rights secured by the Fourth Amendment are personal, the defendant may challenge the admission of evidence obtained by an unreasonable search or seizure only if he had a legitimate expectation of privacy in the place or object invaded. *Rakas v. Illinois*, 439 U.S. 128, 143 (1978); *State v. Granville*, 423 S.W.3d 399, 405 (Tex. Crim. App. 2014) ("A person's constitutional right to be free from unreasonable searches is a personal right that cannot be asserted vicariously."). That is, the defendant must establish standing. *See Kothe v. State*, 152 S.W.3d 54, 59 (Tex. Crim. App. 2004); *Edwards v. State*, 497 S.W.3d 147, 160 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd). A defendant has standing to challenge the reasonableness of a search or seizure if (1) he had a subjective expectation of privacy in the place or object invaded, and (2) society is prepared to recognize that expectation as "reasonable" or "legitimate." *Granville*, 423 S.W.3d at 405–06.

Texas courts have recognized that a person has both a subjective and reasonable expectation of privacy in their cell phone. *See, e.g.*, *Granville*, 423

6

S.W.3d at 405–09 (observing that "a person has a legitimate expectation of privacy in the contents of his cell phone because of its 'ability to store large amounts of private data'" that "may involve the most intimate details of a person's individual life"). But that legitimate expectation of privacy is extinguished if the person abandons the cell phone. *Id.* at 409; *see, e.g.*, *Wiltz v. State*, 595 S.W.3d 930, 934–35 (Tex. App.—Houston [14th Dist.] 2020, pet. ref'd) (defendant lacked standing to challenge search of cell phone that he left in vehicle when he fled traffic stop on foot); *see also United States v. Colbert*, 474 F.2d 174, 176 (5th Cir. 1973) ("[I]t is settled law that one has no standing to complain of a search or seizure of property he has voluntarily abandoned.").

"Abandonment of property occurs if the defendant intended to abandon the property and his decision to abandon it was not due to police misconduct." *McDuff v. State*, 939 S.W.2d 607, 616 (Tex. Crim. App. 1997). Abandonment is primarily a question of intent, and intent may be inferred from words spoken, acts done, and other objective facts. *Id.* The issue is not abandonment in the strict property-right sense, but whether the defendant voluntarily discarded, left behind, or otherwise relinquished his interest in the property so that he could no longer have a reasonable expectation of privacy regarding it at the time of the search or seizure. *Id.*; *see Edwards*, 497 S.W.3d at 160. "When police take possession of property abandoned

7

independent of police misconduct[,] there is no seizure under the Fourth Amendment." *McDuff*, 939 S.W.2d at 616.

Courts have held that a defendant may abandon a legitimate expectation of privacy by disclaiming the property seized or searched, thereby giving up any interest he once had in the property. *See United States v. Escamilla,* 852 F.3d 474, 486 (5th Cir. 2017) (because defendant abandoned cell phone by expressly disclaiming ownership of it and leaving it in the possession of DEI agents, she lacked standing to challenge cell phone search); *United States v. Powell*, 732 F.3d 361, 374–75 (5th Cir. 2013) (because defendant-passenger disclaimed any personal connection to cell phone found in car, she lacked standing to contest its warrantless search by police officer); *State v. Velasquez*, 994 S.W. 2d 676, 678–79 (Tex. Crim. App. 1999) (finding that a defendant abandoned a bag when he twice denied ownership of it); *but see United States v. Lopez-Cruz*, 730 F.3d 803, 808–09 (9th Cir. 2013) (arrestee did not abandon his privacy interest in cell phones because, although he denied ownership of them and said they belonged to a friend, he was in possession of and using them when he was stopped by border patrol agent).

Considering these authorities, the trial court could reasonably conclude that Johnson abandoned the iPhone by disclaiming it. The iPhone was found in the backseat of the Jeep, near where Johnson was sitting at the time of his arrest. But according to his own statements, Johnson denied the iPhone was his when he was

arrested, and he left the iPhone in the possession of the police. In the custodial interview after his arrest, Johnson again disclaimed any interest in the iPhone and told the detective that he had done the same during his arrest. Johnson does not assert that his express disavowals of the iPhone resulted from police misconduct. We conclude that by disclaiming the iPhone, Johnson abandoned it and lacks standing to challenge the cell phone seizure or search. *See Escamilla,* 852 F.3d at 486; *Powell*, 732 F.3d at 374–75. Accordingly, we hold that the trial court did not err by denying Johnson's motion to suppress the cell phone evidence.

We overrule Johnson's two issues on appeal.

### Conclusion

We affirm the trial court's judgment.


Sarah Beth Landau
Justice

Panel consists of Justices Kelly, Landau, and Farris.

Do not publish. TEX. R. APP. P. 47.2(b).